UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JASON CAMPBELL, et al.,

      Plaintiffs,

  v.

PRICEWATERHOUSECOOPERS,

      Defendant.

_____/

NO. CIV. S-06-2376 LKK/GGH

SAMUEL BRANDON KRESS, et al.,

      Plaintiffs,

  v.

PRICEWATERHOUSECOOPERS,

      Defendant.

_____/

NO. CIV. S-08-965 LKK/GGH

LAC ANH LE,

      Plaintiff,

  v.

PRICEWATERHOUSECOOPERS,

      Defendant.

_____/

NO. CIV S-08-997 LKK/EFB

O R D E R

////

1

1    Pending before the court is defendant PricewaterhouseCoopers

2 LLP's (PwC's) motion to consolidate in <u>Campbell v.</u>

3 <u>PricewaterhouseCoopers</u>, 06-2376, <u>Le v. PricewaterhouseCoopers</u>, 08-

4 997, and <u>Kress v. PricewaterhouseCoopers</u>, 08-965, as well as two

5 motions to strike and/or dismiss in <u>Le</u> and <u>Kress</u>. <u>Campbell</u> is a

6 class action against PwC for unpaid overtime, meal and rest break

7 violations, wage statement claims, and waiting time penalties.

8 After the court certified a class of individuals who worked as

9 unlicensed associates in PwC's Attest division, two other putative

10 class actions (<u>Le</u> and <u>Kress</u>) alleging similar overtime claims were

11 transferred to this district.   PwC has now filed a motion to

12 consolidate all three actions as well as two motions to strike

13 and/or dismiss in <u>Le</u> and <u>Kress</u>, arguing that those class actions

14 are collaterally estopped by virtue of the <u>Campbell</u> certification

15 order.   The court resolve the matters on the parties' papers and

16 after oral argument.   For the reasons explained below, the motion

17 to consolidate and the motions to strike and/or dismiss are granted

18 in part and denied in part.

19                          **I. Background**

20 **A. <u>Campbell</u> Certification**

21    On March 25, 2008, the court granted in part the <u>Campbell</u>

22 plaintiffs' motion for class certification, certifying a class of

23 individuals who worked as unlicensed associates in PwC's Attest

24 division at any time from October 27, 2002 to the present and were

25 classified as exempt employees.     <u>Campbell v.</u>

26 <u>PricewaterhouseCoopers, LLP</u>, No. CIV. S-06-2376 LKK/GGH, 2008 WL

818617 (E.D. Cal. Mar. 25, 2008).   As the court noted, PwC is divided into three lines of service: Assurance, Tax, and Advisory. Plaintiffs had initially sought to certify a class that would encompass two of these lines of service, Assurance and Tax.   In addition, plaintiffs sought to certify a class that would include employees with the titles of both associate and senior associate.

The court declined to certify a class outside the Attest division of the Assurance line of service (which, in short, conducts audits).   Based on the record submitted, the court found that there were "significant differences in the work performed between divisions and between lines of service."   Campbell, 2008 WL 818617, at *3.   The court noted that plaintiffs had submitted virtually no evidence of the job duties performed by employees outside their own division,[1] whereas defendant's evidence indicated that job duties varied across division and line of service.   In addition, defendant's evidence also indicated that job duties varied between associates and senior associates.

Because of these differences in job duties, the court found that plaintiffs had failed to show that a common question of law or fact predominated under Federal Rule of Civil Procedure 23(b)(3).   The court also noted that this issue could possibly be viewed as a problem with respect to typicality (i.e., the

---

[1] The court added the caveat that while plaintiffs need not possess personal information regarding the duties performed by these other employees, the plaintiffs' own declarations and depositions were the only sources of information they submitted on this issue.   Campbell, 2008 WL 818617, at *17, n.21.

1   requirement under Rule 23(a)(3) that "the claims or defenses of the

2   representative parties are typical of the claims or defenses of the

3   class"), given that plaintiffs Campbell and Sobek occupied the

4   position of Attest associates at PwC.   Nevertheless, the court

5   noted that "this issue might be better framed as a problem of

6   predominance," rather than typicality.  Campbell, 2008 WL 818617,

7   at *8.

8   **B. Le and Kress**

9       After the court's certification order, two other putative

10  class actions filed against PwC, Le and Kress, were transferred to

11  this district and ultimately assigned to this court.   The putative

12  classes in Le and Kress are similar but not identical to the class

13  certified in Campbell.

14      The scope of the proposed Kress class is similar to that here.

15  Kress Compl. ¶ 20 (defining class as "All persons employed by

16  Defendants in the State of California as salaried exempt employees

17  to do accounting work at any time within four years of the filing

18  [of] this complaint to the present but who were not licensed or

19  certified by the State of California in the Practice of accounting

20  and were not paid overtime").  Unlike Campbell, however, Kress does

21  not include a claim for rest period violations.

22      The scope of the proposed Le class is broader than the class

23  in Campbell, because in addition to seeking certification of a

24  class of unlicensed California associates under California law, Le

25  also seeks certification of a nationwide class of unlicensed

26  associates under the Fair Labor Standards Act (FLSA).   Le Compl.

4

1  ¶ 43.  In addition, whereas the plaintiffs in <u>Campbell</u> only sought

2  to certify a class including employees in the Assurance and Tax

3  lines of service, the class definitions in <u>Kress</u> and <u>Le</u> contain no

4  similar limitation (and thus might presumably encompass the

5  Advisory line of service).

6     PwC has now filed a motion to consolidate all three actions,

7  premised, at least in part, on the assumption that <u>Kress</u> and <u>Le</u>

8  would pursue certification of at least the same class already

9  certified in <u>Campbell</u>.  In their opposition to the motion to

10  consolidate, however, it is clear that all parties agree that those

11  portions of <u>Kress</u> and <u>Le</u> that overlap with the certified class in

12  <u>Campbell</u> should be stayed.  In addition, the plaintiffs in <u>Kress</u>

13  and <u>Le</u> agree that consolidation between their two cases would be

14  appropriate, and have indicated that they plan to file a single

15  consolidated amended complaint, although they oppose consolidation

16  with <u>Campbell</u>.

17     PwC has also filed separate motions to strike and/or dismiss

18  in <u>Kress</u> and <u>Le</u>.  Among other things, PwC argues that collateral

19  estoppel bars the relitigation of the class that the <u>Campbell</u>

20  plaintiffs attempted to certify (i.e., all associate and senior

21  associates within the Assurance and Tax lines of service).  In

22  addition, PwC argues in <u>Le</u> that plaintiff may not use violations

23  of the FLSA as a basis for her UCL claims.

24     **II. Motion to Consolidate**

25  **A. Standard**

26     Federal Rule of Civil Procedure 42(a) provides that "if

1 actions before the court involve a common question of law or fact,

2 the court may . . . consolidate the actions."  The decision to

3 grant or deny consolidation is within the discretion of the

4 district court.   Investors Research Co. v. United States Dist.

5 Court for Central Dist. of California, 877 F.2d 777, 777 (9th Cir.

6 1989); In Re Adams Apple, Inc., 829 F.2d 1484, 1487 (9th Cir. 1987)

7 ("consolidation is within the broad discretion of the district

8 court").   One of the purposes of consolidation is to avoid

9 unnecessary costs or delay that would result from proceeding

10 separately with actions involving common issues of law or fact.

11 See, e.g., Equal Employment Opportunity Commission v. HBE Corp.,

12 135 F.3d 543, 550-51 (8th Cir. 1998) (finding consolidation

13 appropriate because it would "avoid the inefficiency of separate

14 trials involving related parties, witnesses and evidence").

15     To determine whether to consolidate, the court "weighs the

16 interest of judicial convenience against the potential for delay,

17 confusion and prejudice."   Sw. Marine, Inc. v. Triple A Machine

18 Shop, Inc., 720 F. Supp. 805, 807 (N.D. Cal. 1989).  Considerations

19 of convenience and economy must yield to a paramount concern for

20 a fair and impartial trial.   Johnson v. Celotex Corp., 899 F.2d

21 1281, 1484 (2d Cir. 1990), cert. denied 498 U.S. 920 (1990).

22 Factors to be weighed include the risk of prejudice and confusion;

23 risk of inconsistent adjudications of common factual and legal

24 issues; burden on parties, witnesses, and available judicial

25 resources; delay; and expense.   Id.

26 ///

**B. Analysis**

PwC argues that because all three actions involve common questions of law and fact, (1) consolidation will improve economy for both the court and the parties, (2) consolidation will minimize the risk of inconsistent judgments, and (3) consolidation will not cause any undue delay, confusion, or prejudice.  In particular, PwC argues that discovery should be consolidated among all three actions, and the trial of the state law claims should be consolidated.  As discussed below, while the court has reservations as to consolidating <u>Campbell</u> and <u>Le</u>/<u>Kress</u>, this determination should be made at a later stage, after a motion for class certification in <u>Le/Kress</u> has been resolved.

**1. Economy**

With respect to the first reason advanced for consolidation, PwC argues that a consolidated trial over the state law claims would be more economical, because there is "substantial overlap" between the <u>Kress</u> and <u>Le</u> putative classes and the original class sought to be certified in <u>Campbell</u>, as well as the claims at issue in all three actions.  Indeed, PwC characterizes the putative classes in <u>Kress</u> and <u>Le</u> as "closely-related" to the class certified in <u>Campbell</u>.  To argue, as PwC now does, that it would effect a savings of judicial economy to consolidate a trial spanning multiple lines of service (i.e., Assurance, Tax, and possibly Advisory), multiple divisions within each line of service (e.g., Attest, Systems Process Assurance, and Transactional Service, within Assurance), and job levels (i.e., associate and senior

associate) is wholly at odds with what PwC previously represented to the court in the Campbell certification proceedings.  There, PwC argued that there were significant differences in the work performed between divisions and between lines of service, class certification would be inappropriate, as the trial would essentially degenerate into several mini-trials.  PwC cannot have it both ways.

In addition, all parties appear to be in agreement that consolidated discovery would be appropriate, which can occur without a consolidation of the cases themselves.  Duplicative discovery can be avoided by permitting discovery in each related action to be used in all related actions.[2]  With respect to motion practice, the parties may (and should) coordinate hearing dates when appropriate, so that motions may be heard on the same day. Accordingly, many of the efficiency gains sought to be achieved by consolidation can also be achieved without consolidation.

### 2. Inconsistent Judgments

PwC also argues that there will be a risk of inconsistent results absent consolidation.  Again, however, if it is true, as PwC previously represented to the court, that there are in fact different job duties performed by Attest associates (the class certified in Campbell) and by other non-Attest employees or by Attest senior associates (the class sought to be certified in Kress

---

[2] At the status conference held on August 11, 2008, the parties agreed to share discovery across cases so long as a stipulated protective order, like that in place in Campbell, is entered in Le/Kress.

8

1 and Le), then it is entirely possible that there would be different

2 results reached on the merits.   But there would be nothing

3 necessarily inconsistent with those judgments, because they would

4 be decided on the basis of different records.[3]

5      **3. Delay, Confusion, or Prejudice**

6      Finally, PwC argues that consolidation would not cause any

7 undue delay, confusion, or prejudice.   It is clear that

8 consolidation of the trial dates in all three cases would

9 significantly delay the trial date already set in Campbell

10 (currently scheduled for March 3, 2009), given that Kress and Le

11 are at an earlier stage of preparedness.   In order for those latter

12 cases to "catch up," there would likely first be pleadings motions,

13 pre-certification discovery, class certification proceedings,

14 possible Rule 23(f) petitions for appeal, notice proceedings, and

15 actual class notice.   This delay would prejudice the plaintiffs in

16 Campbell.[4]   Particularly where the savings to judicial economy are

17

18     [3] PwC also argues that -- in addition to inconsistent results on the merits -- there would be a risk of inconsistent results as to class certification, because the plaintiffs in Le and Kress seek

19 to achieve what the Campbell plaintiffs did not: certification of a class of non-Attest employees and Attest senior associates.

20 Assuming for the moment that collateral estoppel does not apply, that risk would be present regardless of whether the court grants

21 consolidation.   (PwC could not, for example, achieve through the backdoor of the law of the case doctrine what it could not achieve

22 directly through collateral estoppel.)   In addition, if collateral estoppel did not apply, the plaintiffs would seek certification on

23 an entirely different record than the one before the court in Campbell.   Accordingly, the judgments would not necessarily be

24 inconsistent.

25     [4] That said, the court also recognizes that in many instances, consolidation is appropriate even where cases are at different

26 stages of litigation, unless a case is in fact ready for trial.

1  dubious, this consideration acquires even greater weight.

2      For all these reasons, the motion to consolidate <u>Campbell</u> and

3  <u>Le</u>/<u>Kress</u> is DENIED without prejudice to renewal after the class

4  certification issues have been resolved in those latter cases.  As

5  the plaintiffs in <u>Kress</u> and <u>Le</u> have indicated a willingness to

6  consolidate between their own cases (and have expressed a desire

7  to file a consolidated, amended complaint), the motion to

8  consolidate is GRANTED as to them.

9              **III. Motion to Strike and Dismiss in <u>Kress</u>**

10       PwC has also filed a motion to strike and motion to dismiss

11  in <u>Kress</u>.  The motion (as with the motion filed in <u>Le</u>) principally

12  argues that collateral estoppel bars plaintiffs' class allegations

13  to the extent they are inconsistent with the certified class in

14  <u>Campbell</u>.  In addition, PwC argues that the California Labor Code

15  violations alleged in the complaint cannot serve as a basis for

16  plaintiff's Unfair Competition Law (UCL) claim; that references to

17  the appointment of a receiver must be stricken; that a four-year

18  class period is improper; that all references to "Doe" defendants

19  are improper; and that the request for punitive damages is also

20  improper and must be stricken.[5]

21  ///

22  ///

23  ───────────────

24  <u>See, e.g.</u>, <u>Internet Law Library, Inc. v. Southridge Capital Mgmt.,</u>
25  <u>LLC</u>, 208 F.R.D. 59, 62 (S.D.N.Y. Apr. 11, 2002).

26       [5] To the extent these arguments are duplicated in <u>Le</u>, the
    court's analysis in <u>Kress</u> applies equally to the other motion.

**A. Standard**

Rule 12(f) authorizes the court to order stricken from any pleading "any redundant, immaterial, impertinent, or scandalous matter."  A party may bring on a motion to strike within 20 days after the filing of the pleading under attack.  The court, however, may make appropriate orders to strike under the rule at any time on its own initiative.  Thus, the court may consider and grant an untimely motion to strike where it appears proper to do so.  See 5A Wright and Miller, Federal Practice and Procedure: Civil 2d § 1380.

Motions to strike are generally viewed with disfavor, and will usually be denied unless the allegations in the pleading have no possible relation to the controversy, and may cause prejudice to one of the parties.  See 5A C. Wright & A. Miller, Federal Practice and Procedure: Civil 2d § 1380;  See also Hanna v. Lane, 610 F. Supp. 32, 34 (N.D. Ill. 1985).  If the court is in doubt as to whether the challenged matter may raise an issue of fact or law, the motion to strike should be denied, leaving an assessment of the sufficiency of the allegations for adjudication on the merits.  See 5A Wright & Miller, at § 1380.

**B. Analysis**

**1. Collateral Estoppel**

PwC seeks to estop the Kress (and Le) plaintiffs from pursuing certification of a class of California PwC employees, i.e., the class that the Campbell plaintiffs sought to certify.  The doctrine of collateral estoppel prevents the relitigation of issues previously argued and resolved in a prior proceeding.  Hydranautics

1   v. FilmTec Corp., 204 F.3d 880, 885 (9th Cir. 2000).  Federal law

2   controls the collateral estoppel analysis where a federal court has

3   decided the earlier case.  See McQuillion v. Scharzenegger, 369

4   F.3d 1091, 1096 (9th Cir. 2004).

5        Under both California and federal law, a prior court decision

6   will have preclusive effect under the doctrine of collateral

7   estoppel where (1) the issue to be litigated is identical to that

8   decided in a prior proceeding, (2) the issue is actually litigated

9   in a prior proceeding, (3) the issue is necessarily decided at the

10   prior proceeding,[6] (4) the decision was final on the merits,[7] and

11   (5) the party against whom collateral estoppel is asserted was a

12   party or in privity with a party to the first proceeding.

13   Hydranautics, 204 F.3d at 885; Castillo v. City of Los Angeles, 92

14   Cal. App. 4th 477, 481 (2001).  The party asserting collateral

15   estoppel bears the burden of showing what the prior judgment

16   determined.  Hydranautics, 204 F.3d at 885.

17

---

18      [6] Two alternate but independently sufficient bases for the decision also satisfy this requirement.  In re Westgate-California

19   Corp., 642 F.2d 1174, 1176-77 (9th Cir. 1981).

20      [7] Unlike the approach adopted by California and other jurisdictions, the Ninth Circuit has held that a decision may be

21   final for purposes of collateral estoppel even if not final for purposes of appeal under 28 U.S.C. § 1291.  Compare Luben Indus.,

22   Inc. v. United States, 707 F.2d 1037, 1040 (9th Cir. 1983) with Abelson v. Nat'l Union Fire Ins. Co., 28 Cal. App. 4th 776, 787

23   (1994) ("A judgment is not final for purposes of collateral estoppel while open to direct attack, e.g., by appeal."), J.R.

24   Clearwater v. Ashland Chem. Co., 93 F.3d 176 (5th Cir. 1996) (declining to adopt Restatement's position that "something less

25   than section 1291 finality is sufficient for purposes of issue preclusion"), and GMC Pick-up Truck Fuel Tanks Prods. Liab. Litig.,

26   134 F.3d 133, 146 (3d Cir. 1998).

1   "[I]n deciding whether to apply collateral estoppel, the court
2   must balance the rights of the party to be estopped against the
3   need for applying collateral estoppel in the particular case, in
4   order to promote judicial economy by minimizing repetitive
5   litigation, to prevent inconsistent judgements which undermine the
6   integrity of the judicial system, or to protect against vexatious
7   litigation." Clemmer v. Hartford insurance Co., 22 Cal. 3d 865,
8   875 (1978).

9       Here, the barrier to application of collateral estoppel is the
10  element of privity.  "[A] nonparty may be bound by a judgment
11  because she was 'adequately represented by someone with the same
12  interests who [wa]s a party' to the suit." Taylor v. Sturgell, --
13  U.S. --, 128 S. Ct. 2161, 2172 (2008) (quoting Richards v.
14  Jefferson County, 517 U.S. 793, 798 (1996)) (modifications in
15  original).  This includes properly conducted class actions. Id.
16  "[A]dequate representation is a due process prerequisite to
17  precluding a litigant from his day in court if he was not a party
18  to the earlier litigation." Headwaters Inc. v. U.S. Forest Serv.,
19  399 F.3d 1047, 1054 (9th Cir. 2005).  "Due process requires that
20  the nonparty have had an identity or community of interest with .
21  . . the party in the first action." Citizens for Open Access Etc.
22  Tide v. Seadrift Ass'n, 60 Cal. App. 4th 1053, 1070 (internal
23  quotation marks omitted).

24      It is not at all clear that the interests of the Campbell
25  plaintiffs were fully and completely aligned with the class that
26  plaintiffs here seek to represent.  In the Campbell certification

13

order, the court noted that one could view the dissimilarity between job positions as a problem of typicality under Rule 23(a)(3).  If Campbell and Sobek were "atypical" representatives, it is difficult to conclude that they had identical interests with those who they were deemed inadequate to represent.  Accordingly, the court declines to apply collateral estoppel.

**2. California Labor Code Sections 201, 202, 203, & 226**

PwC also argues that the penalty provisions provided for through California Labor Code sections 201 (immediate payment of wages upon discharge or layoff), 202 (immediate payment of wages upon resignation), 203 (waiting time penalties) & 226 (itemized wage statements) are not cognizable under the UCL.  The court agrees.  The only remedies available to a private plaintiff under the UCL are injunctive relief and restitution.  The remedies afforded by the Labor Code sections identified above are penalties, not restitution.  <u>See</u> <u>Tomlinson v. Indymac Bank</u>, 359 F. Supp. 2d 891, 895 (C.D. Cal. 2005) ("The Court agrees . . . that the remedy contained in [Labor Code] section 203 is a penalty because section 203 does not merely compel Indymac to restore the *status quo ante* by compensating Plaintiffs for the time they worked; rather, it acts as a penalty by punishing Indymac to pay Plaintiffs an additional amount.  This type of payment is clearly not restitutionary, and thus cannot be recovered by the UCL.").  While plaintiffs respond that the UCL's equitable remedies are cumulative and in addition to any remedy provided by the underlying statute, Cal. Bus. & Prof. Code § 17205, UCL remedies are cumulative only if

the underlying statute provides for restitution -- which the Labor Code sections identified above do not.  Instead, the provide for penalties, which are not recoverable under the UCL.

### 3. Appointment of Receiver

Although plaintiffs seek the appointment of a receiver under their UCL claim, plaintiffs have no alleged facts sufficient to show irreparable injury or inadequacy of other remedies, which is required for this "drastic" remedy.  See <u>City & County of San Francisco v. Daley</u>, 16 Cal. App. 4th 734, 745 (1993).  Accordingly, the motion to strike the reference to appointment of a receiver under the UCL claim is granted.

### 4. Four-Year Class Period for All Claims

Plaintiffs have also improperly alleged a four-year class period for all of their claims, rather than properly confining this four-year class period to only their UCL claim (which also seeks restitution for unpaid overtime wages).[8]  Accordingly, the motion to strike is granted as to all improper four-year references in the complaint.

### 5. "Doe" Defendants

As plaintiffs concede, all references to "Doe" defendants must be stricken from the complaint.  See <u>Gillespie v. Civiletti</u>, 629 F.2d 637, 642 (9th Cir. 1980).

///

---

[8] This is a somewhat technical distinction, however, because plaintiffs will be able to assert a four-year class period for any claims that may be brought under the UCL.

1    **6. Punitive Damages**

2        PwC also argues that all requests for punitive damages should

3    be stricken.  The court previously addressed a similar argument in

4    Campbell.  As the court noted, when a statute imposes a penalty,

5    that imposition generally does not foreclose recovery of punitive

6    damages.  Trumbull & Trumbull v. ARA Transportation, Inc., 219 Cal.

7    App. 3d 811, 826 (1983).  If, however, a new right that did not

8    exist at common law is created by statute and a remedy for the

9    violation of that right is provided, "such remedy is exclusive of

10   all others unless the statutory remedy is inadequate." Id. (citing

11   Orloff v. Los Angeles Turf Club, 30 Cal. 2d 110, 112-113 (1947);

12   Strauss v. A.L. Randall Co., 144 Cal. App. 3d 514 (1983)).

13       Here, it appears that punitive damages are unavailable for

14   plaintiffs' second through fifth claims.  First, it is well-settled

15   that punitive damages are not available under the UCL.

16   See In re Wal-Mart Stores, Inc., 505 F. Supp. 2d 609, 620 (2007).

17   Second, it appears that the claims for missed meal breaks, itemized

18   wage statements, and waiting time penalties were not available at

19   common law and accordingly the statutory remedy is exclusive

20   (unless, as no party has argued here, such a statutory remedy is

21   inadequate).  See Czechowski v. Tandy Corp., 731 F. Supp. 406, 410

22   (N.D. Cal. 1990).  That said, PwC has not shown that unpaid wages

23   for time worked (including time worked at an overtime rate) is a

24   new statutory right that did not exist at common law.[9]

25   _____

26       [9] As the court noted in Campbell, plaintiffs may be required
     to elect a remedy where there is a statutory penalty for conduct

1  Accordingly, PwC's request to strike the request for punitive

2  damages is granted in part and denied in part.

3                     **IV. <u>Le</u> Motion to Strike and Dismiss**

4  **A. Standard**[10]

5         In order to survive a motion to dismiss for failure to state

6  a claim, plaintiff must allege "enough facts to state a claim to

7  relief that is plausible on its face."  <u>Bell Atlantic Corp. v.</u>

8  <u>Twombly</u>, -- U.S. --, 127 S. Ct. 1955, 1974 (2007).  While a

9  complaint need not plead "detailed factual allegations," the

10  factual allegations it does include "must be enough to raise a

11  right to relief above the speculative level."  <u>Id.</u> at 1964-65.

12        The Supreme Court recently held that Federal Rule of Civil

13  Procedure 8(a)(2) requires a "showing" that the plaintiff is

14  entitled to relief, "rather than a blanket assertion" of

15  entitlement to relief.  <u>Id.</u> at 1965 n.3.  Though such assertions

16  may provide a defendant with the requisite "fair notice" of the

17  nature of a plaintiff's claim, the Court opined that only factual

18  allegations can clarify the "grounds" on which that claim rests.

19  <u>Id.</u>  "The pleading must contain something more. . . than . . . a

20  statement of facts that merely creates a suspicion [of] a legally

21  cognizable right of action."  <u>Id.</u> at 1965, quoting 5 C. Wright &

22  A. Miller, Federal Practice and Procedure, § 1216, pp. 235-36 (3d

23

24  that also violates common law, but the election is not made at the
   pleading stage.  <u>Trumbull & Trumbull</u>, 219 Cal. App 3d at 826.
25

26      [10]  The court also incorporates by reference the motion to
   strike standard set forth above.

1  ed. 2004).[11]

2      On a motion to dismiss, the allegations of the complaint

3  must be accepted as true.  See Cruz v. Beto, 405 U.S. 319, 322

4  (1972).  The court is bound to give the plaintiff the benefit of

5  every reasonable inference to be drawn from the "well-pleaded"

6  allegations of the complaint.  See Retail Clerks Int'l Ass'n v.

7  Schermerhorn, 373 U.S. 746, 753 n.6 (1963).  In general, the

8  complaint is construed favorably to the pleader.  See Scheuer v.

9  Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by

10  Harlow v. Fitzgerald, 457 U.S. 800 (1982).  Nevertheless, the

11  court does not accept as true unreasonable inferences or

12  conclusory legal allegations cast in the form of factual

13  allegations.  W. Mining Council v. Watt, 643 F.2d 618, 624 (9th

14  Cir. 1981).

15  **B. Analysis**

16      PwC has also filed a motion to strike and dismiss in Le.  As

17  with the motion filed in Kress, PwC argues that collateral

18  estoppel bars certification of the state law class previously

19  sought in Campbell.  The motion is denied for the reasons set

20  forth above.

21  ///

22  ///

23

24      [11]  The holding in Twombly explicitly abrogates the well
established holding in Conley v. Gibson that, "a complaint should
25  not be dismissed for failure to state a claim unless it appears
beyond doubt that the plaintiff can prove no set of facts in
support of his claim which would entitle him to relief."  355 U.S.
26  41, 45-46 (1957); Twombly, 127 S. Ct. at 1968.

1        **1. FLSA & UCL**

2        PwC also argues that Le has attempted to circumvent the

3   procedures that Congress expressly intended for FLSA actions by

4   repackaging her FLSA claim as a UCL claim.  The UCL is a broad

5   provision which prohibits any "unlawful, unfair or fraudulent

6   business act or practice."  Cal. Bus. & Prof. Code § 17200.  The

7   UCL incorporates other laws and treats violations of those laws

8   as independently actionable under state law.  Chabner v. United

9   Omaha Life Ins. Co., 225 F.3d 1042, 1048 (9th Cir. 2000).  Le's

10  seventh claim for relief under the UCL incorporates by reference

11  all previous paragraphs of her complaint; accordingly, Le argues

12  that her FLSA claim, as it pertains to California employees, is

13  governed by the UCL's four-year statute of limitations and the

14  out-out procedure provided by Rule 23, rather than the FLSA's

15  two-year statute of limitations[12] and its opt-in procedure.

16       Although district courts within this circuit are divided on

17  the issue, the prevailing view is that violations of the FLSA may

18  serve as the basis for a UCL claim.  See Takacs v. A.G. Edwards &

19  Sons, Inc., 444 F. Supp. 2d 1100, 1116-18 (S.D. Cal. 2006);

20  Tomlinson, 359 F. Supp. 2d at 900; Bureerong v. Uvawas, 922 F.

21  Supp. 1450, 1477 (C.D. Cal. 1996); Willis v. Cal-Western

22  Transport, No. 00-CV-5695 AWI/LJO, slip op. at 4 (E.D. Cal. Dec.

23  22, 2000); Barnett v. Washington Mutual Bank, No. C 03-00753 CRB,

24  2004 WL 2011462 (N.D. Cal. Sept. 9, 2004); Kelly v. SBC, Inc.,

25  _____

26       [12] This period may be extended to three years upon a showing
    of "willful" statutory violations.  29 U.S.C. § 255(a).

1  No. 97-CV-2729, 1998 WL 92832 (N.D. Cal. Nov. 13, 1998); <u>Aquayo</u>

2  <u>v. Oldenkamp</u>, No. 04-CV-6279 ASI/LJO, 2005 WL 2436477 (E.D. Cal.,

3  Oct. 3, 2005); <u>but see</u> <u>Leuthold v. Destination America, Inc.</u>, 224

4  F.R.D. 462, 470 (N.D. Cal. 2004) and <u>Williams v. Trendwest</u>

5  <u>Resorts Inc.</u>, No. 05-CV-605 RCJ/LRL, 2007 U.S. Dist. LEXIS 62396,

6  at *11 (D. Nev. Aug. 20, 2007).

7       At bottom, PwC's argument is one of preemption: to permit

8  the UCL to "circumvent" the FLSA would, under conflict preemption

9  analysis, allegedly frustrate the full purposes and objectives of

10 Congress.[13]  <u>See</u> <u>Barnett</u>, 2004 WL 2011462, at *5.  The

11 Congressional intent behind the FLSA opt-in procedure was to

12 prevent employees from receiving "windfall payments, including

13 liquidated damages" and to protect employers from facing

14 "financial ruin."  Nevertheless, "[t]hese concerns simply are not

15 present in a UCL action, where plaintiffs are limited to

16 restitution."  <u>Tomlinson</u>, 359 F. Supp. 2d at 900.  Moreover, the

17 Ninth Circuit has held that the FLSA does not preempt state

18 overtime law.  <u>Pacific Merchant Shipping Ass'n v. Aubry</u>, 918 F.2d

19 1409, 1418 (9th Cir. 1990) ("the FLSA does not preempt California

20 from applying its own overtime laws").  By making violations of

21 other laws independently actionable under the UCL, violations of

22

23       [13] Specifically, the objectives allegedly frustrated are those
   contained in the Portal-to-Portal Act, passed in 1947 to amend the
   FLSA to include a limitation on retroactive relief and a statute
24 of limitations.  <u>Bahramipour v. Citigroup Global Markets</u>, No. 04-
   CV-4440, 2006 WL 449132, at *3 (N.D. Cal., Feb. 22, 2006).  That
25 act, however, was "enacted in response to judicial interpretations
   of the FLSA -- not in response to a proliferation of state wage
26 claims."  <u>Barnett</u>, 2004 WL 2011462 at *6.

1  the FLSA essentially become violations of California's own

2  overtime laws as well.

3       In addition, the Ninth Circuit has held that "the central

4  purpose of the FLSA is to enact minimum wage and maximum hour

5  provisions designed to protect employees." Williamson v.

6  Geneeral Dynamics Corp., 208 F.3d 1144 (9th Cir. 2000). Courts

7  should therefore interpret remedial legislation in favor of

8  employee protection. See, e.g., Anderson v. Mt. Clemens Pottery

9  Co., 328 U.S. 680 (1946); Ramirez v. Yosemite Water Co., Inc., 20

10 Cal. 4th 785, 794 (1999) ("[P]ast decisions . . . teach that in

11 light of the remedial nature of the legislative enactments

12 authorizing the regulation of wages, hours and working conditions

13 for the protection and benefit of employees, the statutory

14 provisions are to be liberally construed with an eye to promoting

15 such protection.").[14]

16      Courts have also routinely applied a four-year statute of

17 limitations to FLSA violations brought under the UCL. See

18 Takacs, 444 F. Supp. 2d at 1116 (noting that a claim under the

19 UCL is "not precluded simply because it is procedurally barred by

20 the underlying statute"). In enacting the federal statute of

21 limitation, Congress indicated that "this limitation does not

22 apply to actions for the recovery of wages brought under state

23

24      [14] The cases relied upon by PwC appear out of step with the
    majority of courts to have confronted the issue. Lerwill v.
    Inflight Motion Pictures, Inc., 343 F. Supp. 1027, 1028 (N.D. Cal.
25  1972), for example, was referred to as "weak[] precedent" and
    "dubious authority" by the Ninth Circuit in Williamson, 208 F.3d
26  at 1153.

1  law . . . [and] envisioned not only that state based claims for

2  wages could be asserted, but that they could be governed by

3  separate procedures." Aragon v. Bravo, No. 89-CV-1282 PHX/RCB,

4  1993 WL 432402, at *6 (D. Ariz. May 7, 1993) (citing U.S. Code

5  and Cong. Services, 80th Cong., 1st Session, at 1035 (1947)).

6      In addition, Congress enacted the federal statute of

7  limitation because the absence of an express federal period had

8  engendered non-uniform statutes of limitation for a federal law.

9  "The UCL is a State law and therefore does not present the

10 problems of uniformity addressed by Congress in administering the

11 FLSA." Bahramipour, 2006 WL 4499132 at *6; id. ("The motivation

12 for the two-year statute of limitations was not simply to protect

13 employers, but to ensure uniformity [in interpreting the FLSA]").

14      Accordingly, the court finds that plaintiff's UCL claim is

15 not preempted by the FLSA.  Indeed, by "allowing 'opt-out' class

16 actions and longer statute of limitations for UCL claims,

17 California provides increased protection for its workers,

18 furthering the central purpose of the FLSA." Bahramipour v.

19 Citigroup Global Markets, No. 04-CV-4440, 2006 WL 449132, at *7

20 (N.D. Cal. Feb. 22, 2006).

21      **2. Punitive Damages**

22      PwC also moves to strike Le's request for punitive damages.

23 The court incorporates the discussion of punitive damages set

24 forth above with regard to Kress and further finds that punitive

25 damages are unavailable in FLSA actions seeking unpaid wages.

26 See Shea v. Galaxie Lumber & Constr. Co., 152 F.3d 729, 734 (7th

22

1  Cir. 1998) (punitive damages available for FLSA § 215(a)(3)

2  retaliation claim but not § 207 overtime claim).  Accordingly,

3  the request to strike punitive damages for the FLSA claim is

4  granted.

5      **3. Constructive Trust**

6      Although the UCL permits broad equitable relief, <u>Fletcher v.</u>

7  <u>Sec. Pac. Nat'l Bank</u>, 23 Cal. 3d 442, 449 (1979), including a

8  constructive trust, <u>People v. Orange County Charitable Servs.</u>, 73

9  Cal. App. 4th 1054, 1078 (1999), plaintiff has not alleged (nor

10 argued that it could allege) facts sufficient to support such a

11 remedy.  <u>See</u> 5 Witkin Cal. Proc. Plead § 796 (4th ed.) (assertion

12 of constructive trust as a remedy requires allegation of "fraud,

13 breach of fiduciary duty, breach of promise to buy property for

14 plaintiff, or repudiation of [an] unenforceable express trust.").

15 Accordingly, the motion to strike is granted as to the request

16 for a constructive trust.

17              **V. Conclusion**

18     For the reasons set forth above, the court order as follows:

19 1.   The motion to consolidate <u>Campbell</u> and <u>Kress/Le</u> is

20      DENIED; however, the clerks' office is directed to

21      consolidate <u>Kress</u> and <u>Le</u>.  The consolidated case shall

22      remain related to <u>Campbell</u>.

23 2.   The motion to strike and/or dismiss in both <u>Kress</u> and

24      <u>Le</u> are granted in part and denied in part.

25 3.   Pursuant to the conference held before Judge Hollows on

26      August 11, 2008, the plaintiffs in the consolidated

1  Le/Kress action are to file an amended complaint within

2  21 days and the parties are to submit statements

3  regarding a proposed discovery schedule 10 days

4  thereafter.

5  IT IS SO ORDERED.

6  DATED:  August 14, 2008.

7

8

9

LAWRENCE K. KARLTON
10  SENIOR JUDGE
UNITED STATES DISTRICT COURT

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26