1  William A. Kershaw (STATE BAR NO. 057486)
   Lyle W. Cook (STATE BAR NO. 148914)
2  Stuart C. Talley (STATE BAR NO. 180374)
   KERSHAW, CUTTER, & RATINOFF, LLP
3  401 Watt Avenue
   Sacramento, California 95864
4  Telephone: (916) 448-9800
   Facsimile:  (916) 669-4499
5
   *Attorneys For Plaintiffs*
6

7  LYNNE C. HERMLE (STATE BAR NO. 99779)
   JOSEPH C. LIBURT (STATE BAR NO. 155507)
8  STEVE CHARIYASATIT (STATE BAR NO. 252028)
   ORRICK, HERRINGTON & SUTCLIFFE LLP
9  1000 Marsh Road
   Menlo Park, CA  94025
10 Telephone:    650-614-7400
   Facsimile:    650-614-7401
11
   NORMAN C. HILE (STATE BAR NO. 57299)
12 JULIE A. TOTTEN (STATE BAR NO. 166470)
   DAVID A. PRAHL (STATE BAR NO. 233583)
13 ORRICK, HERRINGTON & SUTCLIFFE LLP
   400 Capitol Mall, Suite 3000
14 Sacramento, CA 95814-4497
   Telephone:    (916) 447-9200
15 Facsimile:    (916) 329-4900

16 *Attorneys for Defendant*

17                    UNITED STATES DISTRICT COURT

18                    EASTERN DISTRICT OF CALIFORNIA

19

20 JASON CAMPBELL and SARAH                Case No.: 06-CV-02376-LKK-GGH
   SOBEK, individually, and on behalf of all
21 other similarly situated current and former
   employees of PricewaterhouseCoopers      **STIPULATION AND ~~PROPOSED~~
22 LLP,                                      ORDER RE: PLAINTIFFS' MOTION TO
                                             COMPEL PRODUCTION OF
23                                           DOCUMENTS**
              Plaintiffs,
24
        vs.
25                                           Date:  September 18, 2008
   PRICEWATERHOUSECOOPERS, LLP,            Time:  10:00 a.m.
26 a Limited Liability Partnership,          Dept: 4

27                                           Magistrate Judge: Hon. Gregory G. Hollows
              Defendant.
28

                                  -1-

1   WHEREAS Plaintiffs Jason Campbell and Sarah Sobek ("Plaintiffs") filed a Motion to
2   Compel Production of Documents on July 18, 2008;

3   WHEREAS the hearing date on Plaintiffs' Motion has been continued three times to allow
4   the parties additional time to meet and confer regarding the disputed discovery issues;

5   WHEREAS the parties have worked cooperatively over the past two months and have
6   reached agreement on the disputed discovery issues as set forth in Exhibit A attached hereto;

7   WHEREAS defendant PricewaterhouseCoopers LLP ("PwC") has not yet produced all of
8   the documents pursuant to the parties' agreements;

9   WHEREAS the parties agree that both parties reserve the right to seek to enforce any
10  issues relating to those agreements that are the subject of this stipulation specifying PwC's
11  production obligations, ~~even~~ after the September 22, 2008 deadline for hearing of motions to
12  compel; if the court approves the parties' acting out of time.

13  WHEREAS the parties agree that both parties may seek to enforce any issues relating to
14  those agreements that are the subject of this stipulation specifying PwC's production obligations
15  only after first meeting and conferring in good faith in an effort to resolve such issues;

16  WHEREAS, based on the agreements reached by the parties, Plaintiffs withdraw their
17  Motion to Compel currently on calendar for September 18, 2008 at 10:00 a.m.;

18  ACCORDINGLY, IT IS HEREBY STIPULATED AND AGREED by and between
19  Plaintiffs Jason Campbell and Sarah Sobek and Defendant PricewaterhouseCoopers LLP, by and
20  through their respective undersigned counsel, that this stipulated order be approved and entered
21  by the Court, and that the hearing on Plaintiffs' Motion to Compel is taken off calendar.

22  IT IS HEREBY STIPULATED.

23  Dated: September 15, 2008.                    KERSHAW, CUTTER & RATINOFF, LLP

24

25                                              _____
                                                William A. Kershaw
26                                              *Attorneys for Plaintiffs*
27                                              Jason Campbell and Sarah Sobek

28

-2-

1  Dated: September 15, 2008.          ORRICK, HERRINGTON & SUTCLIFFE LLP

2

3                                       Julie A. Totten

4                                       *Attorneys for Defendant*
                                        PRICEWATERHOUSECOOPERS LLP
5

6
                                       **ORDER**
7
       PURSUANT TO STIPULATION, **IT IS SO ORDERED.**
8                                      GREGORY G. HOLLOWS

9   Dated: Sep 16, 2008

10                                     Gregory G. Hollows, Magistrate Judge
                                       UNITED STATES DISTRICT COURT
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-3-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## EXHIBIT A

### GENERAL AGREEMENTS

Confidentiality of Documents to be Produced: To the extent PwC agrees to produce any documents in response to the requests for production discussed below, PwC will do so in conformance with the provisions and requirements of the protective order that is on file in this action. Accordingly, where appropriate, PwC will designate produced documents either as "Confidential" or "Highly Confidential" as it has done throughout this litigation.

Privilege and Other Objections Not Withdrawn: To the extent PwC agrees to produce any documents in response to the requests for production discussed below, this does not constitute a waiver of any of the objections PwC has raised to the requests.

Continuing Meet-and-Confer Obligation: The parties agree that (a) in the event that PwC encounters any unforeseen difficulties in complying with the parties' agreement as to the requests discussed below; or (b) any other issues arise regarding the parties' obligations under this agreement, the parties will meet and confer in good faith in an effort to resolve such issues. Only after such meet-and-confer efforts have concluded may either party then move for relief from the Court.

Expert Reports: PwC will be producing documents responsive to Plaintiffs' discovery requests through the non-expert discovery cut off date of October 22, 2008, which is also the date expert designations and reports are due. Accordingly, the parties agree that their experts may provide supplemental reports, prior to the date of their depositions, which refer to, incorporate or rely upon documents or data produced by PwC after September 22, 2008. The parties further agree that, in the event that their experts provide such supplemental reports relying upon documents or data produced by PwC after September 22, 2008, such supplemental reports must be disclosed no later than one week in advance of their corresponding expert deposition, and in any event no later than November 5, 2008. The parties further agree that the deadline for identifying experts and providing reports for rebuttal purposes shall be extended to December 5, 2008.

-1-

1

**SPECIFIC AGREEMENTS**

2     Request Nos. 33-34:  These requests generally seek production of affidavits, declarations,

3     and witness statements, including drafts, obtained by Defendant PricewaterhouseCoopers LLP

4     ("PwC") or its counsel that relate to this lawsuit or the job duties of Attest associates.  Plaintiffs

5     agreed to narrow this request to seek the production of any such documents that were exchanged

6     between PwC and class members.  On August 21, 2008, PwC produced documents responsive to

7     this request pursuant to the parties' agreement narrowing the scope of the request.  PwC believes

8     it has produced all responsive, non-privileged documents in its possession, custody or control.

9     Plaintiffs have not had the opportunity to fully assess PwC's production for completeness.

10     Request No. 35:  This request seeks communications between PwC or its counsel and any

11     person relating to this lawsuit.  Plaintiffs agreed to narrow this request to seek, and PwC has

12     agreed to produce, any responsive, non-privileged "official communications" between PwC

13     management and class members, as well as any responsive, non-privileged communications

14     between class members and PwC's counsel.  Plaintiffs agreed to the "official communication"

15     limitation to avoid imposing the undue burden on PwC of having to search through, for example,

16     the email inboxes of each employee throughout the firm.   The "official communication"

17     limitation does not apply to employees within PwC's human resources departments.  On August

18     21, 2008, PwC produced documents responsive to this request pursuant to the parties' agreement

19     narrowing the scope of the request.  PwC believes it has produced all responsive, non-privileged

20     documents in its possession, custody or control.  Plaintiffs have not had the opportunity to fully

21     assess PwC's production for completeness.

22     Request No. 36:  Plaintiffs have agreed to withdraw this request.

23     Request No. 37:  This request generally seeks production of payroll records for "Non-

24     Licensed Associates" (as that term is defined by Plaintiffs).  In lieu of all such documents,

25     Plaintiffs have agreed to accept production of, and PwC has agreed to produce, specified data

26     contained in class members' pay statements for the time periods during which the class members

27     met the Court-established class criteria.  PwC specifically has agreed to produce the following

28     data for each class member: (1) employee name; (2) employee identification number; (3) payment

-2-

1   date; (4) check number; (5) check status; (6) payment begin and end dates (or applicable pay

2   period); (7) earnings code; (8) earnings amount (gross); (9) hours; (10) net pay; (11) job title; (12)

3   base compensation; (13) total deductions; and (14) earnings (itemized). PwC will produce the

4   first nine categories of data listed above in an electronic format no later than October 7, 2008.

5   PwC will produce the remaining five categories of data listed above in an electronic format no

6   later than October 22, 2008. PwC has further agreed to produce exemplar copies of the named

7   Plaintiffs' actual itemized pay statements no later than October 7, 2008. The parties agree that (a)

8   in the event that PwC encounters any unforeseen difficulties in complying with the parties'

9   agreement as to this request; or (b) any other issues arise regarding the parties' obligations under

10  this agreement, the parties will meet and confer in good faith in an effort to resolve such issues.

11  Only after such meet-and-confer efforts have concluded may either party then move for relief

12  from the Court.

13        Request No. 38:  This request generally seeks production of time, expense and billing

14  records reflecting the number of hours worked by "Non-Licensed Associates" (as that term is

15  defined by Plaintiffs). In lieu of all such documents, Plaintiffs have agreed to accept production

16  of, and PwC has agreed to produce, class members' timekeeping data from PwC's GFS and NEIS

17  timekeeping databases for the time periods during which class members met the Court-

18  established class criteria. Such data shall include:  (1) client chargeable hours, (2) learning and

19  education hours, (3) administrative hours, and (4) overtime hours. PwC confirms that the GFS

20  data to be produced is all of the data used to generate the "Workload Balance Individual Staff

21  Reports." PwC agrees to produce this data in an electronic format by October 7, 2008. The

22  parties agree that (a) in the event that PwC encounters any unforeseen difficulties in complying

23  with the parties' agreement as to this request; or (b) any other issues arise regarding the parties'

24  obligations under this agreement, the parties will meet and confer in good faith in an effort to

25  resolve such issues. Only after such meet-and-confer efforts have concluded may either party

26  then move for relief from the Court.

27        Request No. 39:  This request generally seeks production of documents reflecting the

28  number of hours billed to PwC's clients for work performed by "Non-Licensed Associates" (as

-3-

EXHIBIT A

1   that term is defined by Plaintiffs).  PwC has informed Plaintiffs that client bills for work
2   performed by employees in the Attest line of service do not generally contain information
3   regarding the number of hours billed. Thus, in lieu of such documents, Plaintiffs have agreed to
4   accept production of, and PwC has agreed to produce, copies of the actual bills PwC submitted to
5   its clients in connection with 12 specified audit engagements for which PwC has agreed to
6   produce "MyClient" files.  The parties' agreements regarding Request Nos. 46, 48, 50 and 51,
7   below, set forth the method by which the parties will select the 12 engagements for which the
8   copies of the actual client bills will be produced. PwC agrees to produce such documents as they
9   become available, and will endeavor to produce such documents in their entirety no later than 30
10  days following the selection of the engagements for which PwC has agreed to produce
11  "MyClient" files.  The parties agree that (a) in the event that PwC encounters any unforeseen
12  difficulties in complying with the parties' agreement as to this request; or (b) any other issues
13  arise regarding the parties' obligations under this agreement, the parties will meet and confer in
14  good faith in an effort to resolve such issues.  Only after such meet-and-confer efforts have
15  concluded may either party then move for relief from the Court.

16       Request No. 40:  Plaintiffs have agreed to withdraw this request based on PwC's
17  representation that the documents being produced in response to Request No. 38, above, contain
18  all of the information sought in this Request with the exception of work schedule information.

19       Request No. 41:  Plaintiffs have agreed to withdraw this request based on PwC's
20  representation that the GFS data to be produced in response to Request No. 38, above, contains all
21  of the data that is used to generate PwC's "Workload Balance Individual Staff" reports.

22       Request Nos. 42-45:  PwC believes that, subject to PwC's reasonable narrowing of the
23  scope of these requests, it has produced documents that are most directly responsive to the
24  requests. PwC has provided supplemental written responses confirming its position in this regard.

25       Request Nos. 46, 48, 50 and 51: These requests generally seek the production of exemplar
26  audit programs and "MyClient" files for the different "type(s) of audit engagements performed by
27  PwC," as well as the "MyClient" files for each of the engagements worked on by the named
28  Plaintiffs. In lieu of all such documents, Plaintiffs have agreed to accept production of, and PwC

-4-

has agreed to produce eight full sets of "MyClient" files in their native formats, redacted of attorney-client privileged information and attorney work product.   The following details the parties' agreements regarding these files:

(a)   PwC is entitled to limit the production of the eight full "MyClient" files to engagements from the 2007-2008 timeframe.

(b)   PwC will produce any audit opinions, management letters or other non-attorney client privileged communications that are contained in the "MyClient" files for the selected engagements.

(c)   PwC will select two of the eight sets of "MyClient" files.   The remaining six sets of "MyClient" files will be selected based on a random sampling of class members.   The parties will work together to arrive at a mutually agreeable method of selecting the engagements from which the "MyClient" files are pulled for each sampled class member, recognizing that client relations or other similar issues may require PwC to strike certain engagements that might otherwise be agreeable to the parties.   If the parties cannot agree to a selection methodology, the parties stipulate and agree that the Court shall make the decision, consistent with the limitations referenced above.

(d)   As to four of the eight sets of "MyClient" files, Plaintiffs have agreed to accept production of, and PwC has agreed to produce, paper copies of the "screen shots" of the first level of source material behind the external links that still function within the "MyClient" files. (PwC will not provide paper copies of those links that lead to other locations within the MyClient files because Plaintiffs will have access to this information.) These four sets of "MyClient" files will most likely be from 2008, since the likelihood that the source material behind the links will work is much greater for this time period than for earlier years.   In addition to producing these "MyClient" files in their native formats, PwC may also produce them in a TIFF format.

In addition to the eight full sets of "MyClient" files referenced above, Plaintiffs have

-5-

1   agreed to accept production of, and PwC has agreed to produce, the full "MyClient" files (again
2   in native format and redacted of attorney-client privileged information and attorney work
3   product) corresponding with four engagements for which PwC already produced work papers
4   specific to the named Plaintiffs. PwC will again produce any audit opinions, management letters
5   or other non-attorney client privileged communications that are contained in the "MyClient" files
6   for the four engagements. PwC will not produce any paper copies of the "screen shots" of the
7   source materials behind the links contained in these "MyClient" files. PwC may also produce
8   these "MyClient" files in TIFF format in addition to their native file formats.

9          Plaintiffs agree that whenever Plaintiffs cite to, reference, or otherwise use a hard copy
10  printout of any document from the "MyClient" files PwC has agreed to produce, Plaintiffs will
11  timely identify the specific database and file from which it was printed so that PwC may compare
12  it to the original file. PwC reserves the right to object to the use of any copy of any document in
13  the "MyClient" files, and any testimony or other evidence derived from it, if it is later determined
14  that the document is an inaccurate printout of the native format "MyClient" document.

15         No specific date has been set for the production of the above-referenced "MyClient" files.
16  However, PwC agrees to immediately begin work on reviewing and readying for production the
17  MyClient files corresponding with the engagements for which work papers were already
18  produced for the named Plaintiffs. PwC also agrees to immediately begin the work of selecting,
19  reviewing and readying for production the two sets of "MyClient" files it will be choosing. As to
20  the MyClient files that will be randomly selected, PwC agrees to produce the complete MyClient
21  files within 30 days of the date the selection is made.

22         The parties agree that (a) in the event that PwC encounters any unforeseen difficulties in
23  complying with the parties' agreement as to these requests; or (b) any other issues arise regarding
24  the parties' obligations under this agreement, the parties will meet and confer in good faith in an
25  effort to resolve such issues. Only after such meet-and-confer efforts have concluded may either
26  party then move for relief from the Court.

27         Request Nos. 47, 49, 53, 54 and 55: These requests generally seek production of (a) audit
28  programs used by PwC to conduct "mock audits" during PwC's Go Audit 1 and Go Audit 2

-6-

1    trainings; (b) the "MyClient" files used to conduct "mock audits" during PwC's Go Audit 1

2    trainings; and (c) all documents and electronically stored information used at PwC's Go Audit 1,

3    Go Audit 2 and Go Audit 3 trainings from October 2002 to the present.  In lieu of all such

4    documents, Plaintiffs have agreed to accept production of, and PwC has agreed to produce, the

5    following materials:

6       (a)    A copy of the "MyClient" and other "mock audit" simulation files used at Go

7              Audit 1 and Go Audit 2 trainings for 2005, 2007 and 2008.  PwC agrees to

8              produce these files on CDs in their native format by September 30, 2008.  As to

9              the "links" referenced in these MyClient files, PwC will produce paper copies of

10             the "screen shots" of the first level of source material behind the external links that

11             still function within such materials for the 2008 trainings only.  [PwC will not

12             provide paper copies of those links that lead to other locations within the MyClient

13             file because Plaintiffs will have access to this information.]  PwC agrees to

14             produce the paper copies of the source material behind the external links that still

15             function within the 2008 "MyClient" and other "mock audit" simulation files on a

16             rolling basis, and will complete their production by October 22, 2008.

17      (b)    Learners' and instructors' materials used at PwC's Go Audit 1 and Go Audit 2

18             trainings for 2005, 2007 and 2008.  PwC agrees to produce these materials on a

19             rolling basis, and will complete their production by October 22, 2008.

20      (c)    Learners' materials and instructors' materials used at PwC's Go Audit 3 trainings

21             for 2005 and 2006.  PwC agrees to produce these materials a rolling basis, and will

22             complete their production by October 22, 2008.

23          Similar to the parties' agreement regarding "MyClient" files, Plaintiffs agree that

24   whenever Plaintiffs cite to, reference, or otherwise use a hard copy printout of any document from

25   the MyClient and other "mock audit" simulation files used at Go Audit 1 and Go Audit 2 trainings

26   for 2005, 2007 and 2008, Plaintiffs will timely identify the specific database and file from which

27   it was printed so that PwC may compare it to the original file.  PwC reserves the right to object to

28   the use of any copy of any document in the "mock audit" simulation files, and any testimony or

-7-

EXHIBIT A

1   other evidence derived from it, if it is later determined that the document is an inaccurate printout
2   of the native format "mock audit" simulation file.

3           The parties agree that (a) in the event that PwC encounters any unforeseen difficulties in
4   complying with the parties' agreement as to these requests; or (b) any other issues arise regarding
5   the parties' obligations under this agreement, the parties will meet and confer in good faith in an
6   effort to resolve such issues.  Only after such meet-and-confer efforts have concluded may either
7   party then move for relief from the Court.

8           Request No. 52:  This request seeks production of all documents pertaining to plaintiffs
9   Campbell and Sobek.  In lieu of all such documents, Plaintiffs have agreed to accept production
10  of, and PwC has agreed to produce, all non-privileged documents evidencing any disciplinary
11  action taken against the named Plaintiffs.  As noted in PwC's supplemental discovery responses,
12  subject to this agreement, PwC has conducted a reasonable search and located no responsive
13  documents beyond what it has already produced in this lawsuit.

14          Request Nos. 56-58:  Plaintiffs have agreed to withdraw these requests.

15          Request Nos. 59-61:  These requests seek the production of electronic copies or complete
16  printouts of three PwC databases: (1) the "PwC Audit" database; (2) the "MyClient U.S. Template
17  Manager" database; and (3) the "Master Datasets" database.  Plaintiffs have agreed to withdraw
18  their request for the *full* contents of these databases.  In lieu of all such documents, and as a
19  condition of the parties' agreements regarding Request Nos. 46, 48, 50 and 51, described above,
20  Plaintiffs have agreed to accept production of, and PwC agrees to produce, documents
21  constituting the closest approximation to the indices of the current versions of these databases.

22          Request No. 62:  PwC believes that, subject to PwC's reasonable narrowing of the scope
23  of this request, it has produced policies, procedures, and other documents that are most directly
24  responsive to the request.  PwC has provided a supplemental written response to the request
25  confirming its position in this regard.

26          Request No. 63:  This request generally seeks production of all documents withheld from
27  production by PwC in response to plaintiffs' First Set of Requests for Production of Documents
28  based on its objection that such documents improperly constituted "merits" discovery.  PwC has

-8-

EXHIBIT A

1    conducted a reasonable search for documents that it has withheld solely on this basis and has been

2    unable to locate any such documents.

3        Request No. 64:  This request generally seeks production of performance reviews for each

4    witness identified by PwC in its Fourth Set of Supplemental Disclosures.  In lieu of all such

5    documents, Plaintiffs have agreed to accept production of, and PwC has agreed to produce, ARC

6    and engagement reviews for the 16 class members identified in its Fourth Set of Supplemental

7    Disclosures.  On August 21, 2008 and August 29, 2008, PwC produced such documents based on

8    the parties' narrowing of the request.  PwC believes it has produced all responsive documents in

9    its possession, custody or control based on the parties' narrowing of the request.  Plaintiffs have

10   not had the opportunity to fully assess PwC's production for completeness.

11       Request No. 65:  This request generally seeks production of documents relating to any

12   disciplinary action taken by PwC against any of the witnesses identified by PwC in its Fourth Set

13   of Supplemental Disclosures.  In lieu of such documents, Plaintiffs have agreed to accept

14   production of, and PwC has agreed to produce, any performance-related disciplinary documents

15   pertaining to any class members listed on PwC's Fourth Set of Supplemental Disclosures.  As

16   noted in PwC's supplemental discovery responses, based on the parties' narrowing of the scope of

17   this request, and after a reasonable search for such documents, PwC has located no responsive

18   documents.

19       Request No. 66:  This request generally seeks production of communications between

20   PwC or its counsel and any witness identified in PwC's Fourth Set of Supplemental Disclosures

21   regarding this lawsuit.  In lieu of all such documents, Plaintiffs have agreed to accept production

22   of, and PwC has agreed to produce, responsive, non-privileged communications with class

23   members regarding this lawsuit.  This will include non-privileged communications even if the

24   class member was, for example, a manager at the time of the communication.  PwC has produced

25   such communications.  For any responsive, privileged communications that were withheld from

26   production, PwC will produce a privilege log.

27       Request Nos. 67, 68 and 70:  Plaintiffs have agreed to withdraw these requests.

28       Request No. 69:  PwC has agreed to produce all responsive, non-privileged documents in

-9-

EXHIBIT A

1    its possession, custody or control.  To the extent any documents are withheld on the basis of a

2    privilege claim, PwC will provide Plaintiffs with a privilege log describing all such documents.

3            Request No. 71-87:  These requests generally seek production of documents showing that

4    PwC had policies and/or procedures authorizing "Non-Licensed Associates" (as that term is

5    defined by Plaintiffs) to take meal and rest periods, or documents showing that such employees

6    actually took meal and rest periods.  Plaintiffs have agreed to narrow the scope of these requests

7    to seek such documents relating to class members.  Based on the parties' narrowing of the scope

8    of these requests, PwC has confirmed that with regard to policies and procedures, it has

9    conducted a reasonable search for such documents and been unable to locate any responsive

10   documents.  PwC has provided supplemental written responses in this regard.  With regard to

11   documents showing class members took meal and rest periods, PwC has agreed to produce

12   documents containing expense report data based on a random sampling of class members in

13   accordance with a sampling process outlined by PwC.  These documents will be produced by

14   October 15, 2008.  The parties agree that (a) in the event that PwC encounters any unforeseen

15   difficulties in complying with the parties' agreement as to these requests; or (b) any other issues

16   arise regarding the parties' obligations under this agreement, the parties will meet and confer in

17   good faith in an effort to resolve such issues.  Only after such meet-and-confer efforts have

18   concluded may either party then move for relief from the Court.

19           Request Nos. 88-110:  As noted in PwC's supplemental responses, PwC has conducted a

20   reasonable search for the documents sought in these requests (in the cases of Request Nos. 88-90,

21   based on the narrowing of the scope of the requests as agreed by the parties) and has not located

22   any responsive documents.

23           Request No. 111:  This request generally seeks production of documents relating to bonus

24   programs offered to "Non-Licensed Associates" (as that term is defined by Plaintiffs).  The

25   parties have agreed to narrow the scope of this request to seek documents evidencing bonus

26   programs that are or were tied to hours worked by class members.  Based on this agreement,

27   Plaintiffs have agreed to accept production of, and PwC has agreed to produce, responsive

28   documents by October 1, 2008.  The parties agree that (a) in the event that PwC encounters any

-10-

1   unforeseen difficulties in complying with the parties' agreement as to this request; or (b) any other

2   issues arise regarding the parties' obligations under this agreement, the parties will meet and

3   confer in good faith in an effort to resolve such issues.  Only after such meet-and-confer efforts

4   have concluded may either party then move for relief from the Court.

5       Request No. 112 (Plaintiffs' Third Set of Requests for Production, propounded on August

6   28, 2008):  This request seeks the production of documents that PwC used or relied upon to

7   establish the time periods for the electronic payroll data that it has agreed to produce in response

8   to Request No. 37.  PwC agrees to submit a formal response to this request no later than

9   September 22, 2008.  PwC will produce documents responsive to this Request at the time it

10   submits its formal response, subject to any objections to the request raised by PwC in its formal

11   response.  The parties agree that (a) in the event that PwC encounters any unforeseen difficulties

12   in complying with the parties' agreement as to this request; or (b) any other issues arise regarding

13   the parties' obligations under this agreement, the parties will meet and confer in good faith in an

14   effort to resolve such issues.  Only after such meet-and-confer efforts have concluded may either

15   party then move for relief from the Court.

16       Request No. 113 (Plaintiffs Third Set of Requests for Production, propounded on August

17   28, 2008):  This request seeks the production of documents that PwC used or relied upon to

18   establish the time periods for the electronic timekeeping data that it has agreed to produce in

19   response to Request No. 38.  PwC agrees to submit a formal response to this request no later than

20   September 22, 2008.  PwC will produce documents responsive to this Request at the time it

21   submits its formal response, subject to any objections to the request raised by PwC in its formal

22   response.  The parties agree that (a) in the event that PwC encounters any unforeseen difficulties

23   in complying with the parties' agreement as to this request; or (b) any other issues arise regarding

24   the parties' obligations under this agreement, the parties will meet and confer in good faith in an

25   effort to resolve such issues.  Only after such meet-and-confer efforts have concluded may either

26   party then move for relief from the Court.

27

28