UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JASON CAMPBELL and
SARAH SOBEK, individually,
and on behalf of all other
similarly situated current
and former employees of
PricewaterhouseCoopers, LLP,,

                              NO. CIV. S-06-2376 LKK/GGH

    Plaintiffs,

    v.

PRICEWATERHOUSECOOPERS, LLP,      **O R D E R**
a Limited Liability Partnership;,
and DOES 1-100, inclusive,

    Defendant.
_____/

**I.   INTRODUCTION**

This is a California wage and hour class action lawsuit.[1]  It is brought by persons who were employed as unlicensed junior accountants ("Junior Associates" or "Attest Junior Associates") by

////

////

---

[1] Jurisdiction is based upon class action diversity, 28 U.S.C. 1332(d)(2)(A).

1

the Attest group at PricewaterhouseCoopers LLC ("PwC")[2] in California, from October 27, 2002 to the filing of the Second Amended Complaint.[3] On March 25, 2008, the court certified the class of Attest Junior Associates.[4] <u>Campbell v. PricewaterhouseCoopers, LLP</u>, 253 F.R.D. 586 (E.D. Cal. 2008).

The certified class Plaintiffs allege that PwC improperly classified them as "exempt" employees under California labor laws, and failed to pay them required overtime (and to provide certain other benefits). Defendants assert that plaintiffs are exempt from the overtime requirement.

On August 14, 2008, this court denied defendant's motion to consolidate this case with <u>Le v. PricewaterhouseCoopers</u>, Civ. S:8-997 (E.D. Cal.), and <u>Kress v. PricewaterhouseCoopers</u>, Civ. S:8-965 (E.D. Cal.). Discovery closed on February 20, 2009.[5]

On March 11, 2009, this court granted plaintiffs' motion for partial summary judgment on defendant's "exemption" affirmative defense, holding that plaintiffs were not exempt from the overtime laws. The Ninth Circuit disagreed, holding that the exemption

---

[2] Attest is a sub-division of Assurance, which is a sub-division of PwC.

[3] The parties variously refer to the plaintiffs as "junior accountants," "associate accountants," "associates" and "Attest Associates." The court will refer to them as Junior Associates or Attest Junior Associates.

[4] The court excluded senior associates from the class. <u>Campbell</u>, 253 F.R.D. at 605-06.

[5] Defendant's motion to re-open discovery was denied on December 12, 2011. Dkt. No. 504.

2

1 issue was a question of fact for the jury.[6]

2 On November 1, 2011, plaintiffs in Kress moved for class certification of persons employed as "Senior Associates" in the Assurance sub-division of PwC. Kress v. PricewaterhouseCoopers, LLC, Civ:S 8-964 (E.D. Cal.) (Dkt. No. 245). It appears to be undisputed that some of the Senior Associates sought to be certified in Kress used to be Attest Junior Associates during the class period. Therefore, these Senior Associates are also class members in Campbell.

## II.  MOTION FOR PROTECTIVE ORDER

Plaintiffs seek a "protective order" enjoining PwC and its counsel (Gibson, Dunn & Crutcher and Orrick, Herrington & Sutcliffe), from interviewing Campbell class members – Attest Junior Associates during the class period – without the consent of class counsel (Kershaw, Cutter & Ratinoff). Plaintiffs assert that this conduct violates the California Code of Conduct for attorneys, Rule 2-100(A). Rule 26(c), Fed. R. Civ. P., governs "Protective Orders" in discovery. Plaintiffs seem to be arguing that defendant's "private discovery," conducted outside the discovery process, is an impermissible attempt to circumvent the rules of discovery and furthermore are being conducted in violation of counsel's ethical obligations, thus warranting a protective order.[7]

---

[6] Campbell v. PricewaterhouseCoopers, LLP, 642 F.3d 820 (9th Cir. 2011), rev'g 602 F. Supp.2d 1163 (E.D. Cal. 2009).

[7] See Bernal v. Southern Pacific Trans. Co., 196 F.R.D. 371 (E.D. Cal. March 14, 2000) (Damrell, J.) (issuing protective order to stop railroad from contacting represented employee plaintiff)

3

1  Defendant asserts the right to interview these class members
2  so that it can prepare its opposition to the class certification
3  motion in Kress.  In fact, it appears that defendant has already
4  interviewed some of the Campbell class members.  While defendant
5  concedes that it has been talking to Campbell class members, and
6  wishes to continue doing so, it asserts that it is not talking to
7  them about the subject of their representation.

### III. STANDARDS

"A party or any person from whom discovery is sought may move for a protective order ...." Fed. R. Civ. P. 26(c).  The court may issue a protective order for "good cause."  Id.  "The party opposing disclosure has the burden of proving 'good cause,' which requires a showing 'that specific prejudice or harm will result' if the protective order is not granted." Father M. v. Various Tort Claimants (In re Roman Catholic Archbishop of Portland in Oregon), 661 F.3d 417, 424 (9th Cir. 2011) (regarding protective order enjoining public disclosure of discovery documents), cert. denied, 566 U.S. ___, 80 U.S.L.W. 3562 (April 2, 2012).

### IV. ANALYSIS

Both sides agree that PwC (and its counsel) may not talk to the Attest Junior Associates – the Campbell class plaintiffs – "about the subject" of their representation by class counsel. See Defendant's Legal Contentions (Dkt. No. 509) at 35; Plaintiff's

---

("Discovery is closed in this case. SP/UP may not continue to engage in ex parte communications ordering plaintiff to disclose information regarding the subject matter of this litigation under the guise of exercising its rights under the CBA").

4

Legal Contentions (Dkt. No. 509) at 15. There seems to be no disagreement that this remains true even for those <u>Campbell</u> class members who are now Senior Associates.

Rather, the sole focus of the arguments is whether PwC's communications with those <u>Campbell</u> class members are "on the subject" of their representation by class counsel. On this, defendant avoids the issue, relying instead on an implicit argument that only communications about class members' <u>own</u> duties as Attest Junior Associates are covered. The argument is implicit, because PwC does not state outright that the subject of the representation only covers a class member's <u>own</u> Junior Associate duties. Instead, over and over, PwC states that counsel will not talk to <u>Campbell</u> class members about <u>their own</u> work as Attest Junior Associates.[8] It never addresses whether counsel will talk with <u>Campbell</u> class members about the work of <u>other</u> Attest Junior Associates, namely,

---

[8] <u>See</u> PwC's Position (Dkt. No. 509) at 8 ("the interview ... will not include any questions on the subject of <u>the employee's</u> duties as an Associate"). <u>See also</u>, PwC's Contentions (Dkt. No. 509) at 38 ("PwC was able to interview its employees about their duties and responsibilities as Senior Associates without discussing <u>their</u> duties and responsibilities as Associates") (emphasis added); <u>id.</u> at 42 ("PwC has been entirely vigilant in its efforts to ensure that all contacts with <u>Campbell</u> class members are voluntary on the part of the employees and that there is no discussion with <u>Campbell</u> class members about <u>their</u> Associate responsibilities") (emphasis added); <u>id.</u> at 42 ("PwC's attorneys also made clear ... that they were not there to speak about the Campbell lawsuit nor about work performed <u>while an Attest Associate</u>") (emphasis added); <u>id.</u> at 42 ("PwC's attorneys did not question these individuals regarding <u>their</u> duties and responsibilities as Associates") (emphasis added). <u>See also</u>, PwC's Supplemental Memorandum (Dkt. No. 541) at 11 (the fact of supervision "does not reflect whether the unidentified subjects of supervision are even members of the <u>Campbell</u> class").

5

those Attest Junior Associates whom they supervise and whose work they review.[9]  Thus, the court interprets PwC's implicit argument to be that communications about the work of someone else's duties as an Attest Junior Associate are not covered by the ban on communications.

Plaintiffs take a broader view.  They argue that PwC's communications with Campbell class members "cannot help" but include communications "about the inter-related job responsibilities of Attest Associates."  Dkt. No. 509 at p.18.  Plaintiffs note that Senior Associates supervise Junior Attest Associates.  Id.  Indeed, this court has already found that "[a] significant if not primary responsibility for senior associates is to review the work of associates."  Campbell v.

---

[9] At one point, PwC misinterprets its own declaration to insinuate that the interviews of Senior Associates will not discuss the work of any Associate: "Most importantly, PwC made it clear that there would be no discussion of the duties and responsibilities of Attest Associates and the Campbell case, and indeed no such discussions have occurred.  Thomasch Decl. ¶¶ 12, 14, 15."  Defendant's Legal Contentions (Dkt. No. 509) at 43.  But the insinuation is incorrect.  The declaration upon which this statement is based only denies that there was any discussion about the Senior Associate's own responsibilities from the time he was an Attest Junior Associate.  See Thomasch Decl. ¶ 12 ("The HR Admonishment for Campbell class members also made clear that outside counsel, who would be conducting the interviews, would not ask questions about the employee's Associate responsibilities .... Neither PwC nor its attorneys will ask you any questions about the job duties you performed as an Attest Associate ....") (emphasis added); ¶ 14 (same); ¶ 15 (every attorney from Orrick and Gibson who performed these interviews confirms that "no questions were asked of the Campbell class members that sought information about the employee's responsibilities as an Attest Associate at PwC" and "there was no discussion during the interview about the employee's responsibilities and duties as a PwC Associate") (emphasis added).  It never denies that there was discussion of any Attest Junior Associate's duties.

6

1  PricewaterhouseCoopers, LLP, 253 F.R.D. 586, 604-05 (E.D.
2  Cal. 2008).

3  Plaintiffs have the better of the argument. The subject of
4  the representation is not just a particular Campbell class member's
5  own experience as an Attest Junior Associate. It includes the work
6  experiences of the class members – Attest Junior Associates –
7  during the class period. Their current work in supervising Attest
8  Junior Associates can reasonably be expected to throw light upon
9  the class members's own work experiences during the class period.
10 When PwC, or its counsel, talks to the Senior Associates about
11 their own work in supervising the Attest Junior Associates, they
12 cannot avoid talking about the work the Seniors are supervising,
13 namely, the work of Attest Junior Associates. Similarly, when PwC,
14 or its counsel, talks to the Senior Associates about their reviews
15 of the Associates' work, they cannot avoid talking about the work
16 under review, namely, the work of Attest Junior Associates. The
17 work of Senior Associates in reviewing Attest Junior Associates is
18 joined at the hip with the work of the Attest Junior Associates;
19 they are simply different sides of the same work.

20 Indeed, even if PwC's implicit argument were accepted, the
21 declarations plaintiffs filed after the hearing on this matter show
22 how impossible it was for PwC to avoid talking even about the
23 declarant's own experiences as a Attest Junior Associate. To take
24 just one example, the Declaration of Jared Enbom discusses his
25 supervision of Junior Attest Associates, and asserts: "in order to
26 effectively review work product, I needed to know what to look for,

7

for which I relied on my cumulative audit and accounting experience, as well as my education and training." But Enbom's cumulative audit and accounting experience necessarily includes his experience as a Junior Attest Associate. The Declaration – which of course is not a transcript of the secret interview PwC conducted with Enbom – does not disclose how deeply he discussed his cumulative experience with PwC's counsel, or if he did so at all. But it is sufficient to know that the subject was discussed, as disclosed in the Declaration.[10]

Good cause exists to issue a protective order to ensure that no such secret communications occur in the future.[11] The court sees no prejudice to PwC in this, as it had the opportunity to seek depositions or other discovery of Campbell class members while discovery was still open. If it wishes to get discovery of Senior Associates who are Campbell class members, it presumably can seek class counsel's consent, serve interrogatories, or depose them for as long as discovery is open in Kress.

**V.   CONCLUSION**

For the foregoing reasons, plaintiffs' motion for a protective

---

[10] After the hearing on this case, at the court's request, plaintiffs disclosed the declarations of Campell class members which were submitted by defendants in the related Kress case.

[11] Other courts have granted such relief in these circumstances. See, e.g., Resnick v. American Dental Ass'n, 95 F.R.D. 372, 377 (D. Ill. 1982) (granting protective order to enjoin defendant's communications with its employees who are member of the class).

order is **GRANTED**.[12]

IT IS SO ORDERED.

DATED: April 17. 2012.

_/s/ Lawrence K. Karlton_
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

---

[12] Class counsel has not thus far sought any relief regarding plaintiff class members who have already been secretly interviewed by defense counsel, and accordingly the court does not address the issue. In any event, PwC's (and its counsel's) early request for guidance on this issue, and its openness about the fact that it was conducting these interviews does not seem to support an inference that it was aware that the interviews were "on the subject" of the class members' representation by class counsel.

9