1

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT

8            FOR THE EASTERN DISTRICT OF CALIFORNIA

9

JASON CAMPBELL and
10 SARAH SOBEK, individually,
and on behalf of all other
11 similarly situated current
and former employees of
12 PricewaterhouseCoopers, LLP,,

                                NO. CIV. S-06-2376 LKK/GGH
13

        Plaintiffs,
14

    v.
15

PRICEWATERHOUSECOOPERS, LLP,              **O R D E R**
16 a Limited Liability Partnership;,
and DOES 1-100, inclusive,
17

        Defendant.
18 _____/

19        Defendant moves to de-certify the plaintiff class.  For the

20 reasons set forth below, the motion will be denied.

21 **I.    INTRODUCTION**

22        This is a class action brought by Attest Junior Associates

23 employed in the California offices of PricewaterhouseCoopers LLC

24 ("PwC") in California.[1]  Jurisdiction is based upon class action

25 _____

26        [1] The plaintiffs are variously referred to as "junior
   accountants," "associate accountants," "associates" and "Attest

                              1

1  diversity, 28 U.S.C. § 1332(d)(2)(A).  The Second Amended Complaint

2  alleges that PwC violated California wage and hour laws by, among

3  other things, failing to pay required overtime to plaintiffs.

4  California law:

5      provides that a California employee is entitled to
       overtime pay for work in excess of eight hours in one
6      workday or 40 hours in one week.

7  Harris v. Superior Court, 53 Cal.4th 170, 177-78 (2011), citing

8  Cal. Labor Code § 510(a).

9      Plaintiffs allege, and defendant disputes, that PwC improperly

10 classified plaintiffs as "exempt" employees under California labor

11 laws.  This classification, if correct, would allow PwC to, among

12 other things, avoid paying plaintiffs overtime wages for overtime

13 work.  As relevant here, California Law exempts from the overtime

14 pay requirement, "administrative, and professional employees" whose

15 primary duties meet the test of the exemption, and who regularly

16 exercise "discretion and independent judgment" in performing those

17 duties.[2]   Harris, 53 Cal.4th at 178, citing Cal. Labor Code §

18 515(a).

19     On March 25, 2008, this court certified the following class

20 of plaintiffs:

21     All persons employed by PricewaterhouseCoopers, LLP in
       California, from October 27, 2002, until the time when
22     class notice was given, who: (1) assisted certified
       public   accountants   in   the   practice   of   public
23     accountancy, as provided for in California Business and

24 _____

   Associates."
25
       [2]  The law also exempts "executive" employees.  However,
26 defendant no longer asserts that exemption.

                                  2

1       Professions Code §§ 5051 and 5053; (2) worked as
2       Associates in the "Attest" Division of the "Assurance"
      Line of Service (hereinafter, "Attest Associates"); (3)
3       were not licensed by the State of California as
      certified public accountants during some or all of this
4       time period; and (4) were classified as "exempt"
      employees.

5   See Campbell v. PricewaterhouseCoopers, LLP, 253 F.R.D. 586, 590

6 (E.D. Cal. 2008) (Karlton, J.).[3]  The Ninth Circuit declined to

7 review the order on interlocutory appeal.

8     On March 11, 2009, this court granted plaintiffs a summary

9 adjudication on their assertion that Attest Associates could not

10 qualify for the "professional" employee exemption because they were

11 unlicensed.  See Campbell v. PricewaterhouseCoopers, LLP, 602 F.

12 Supp.2d 1163 (E.D. Cal. 2009) (Karlton, J.).  The Ninth Circuit

13 reversed, holding that even unlicensed accountants could qualify

14 for the "professional" employee exemption if they fit within the

15 "learned profession" part of that exemption.  See Campbell v.

16 PricewaterhouseCoopers, LLP, 642 F.3d 820 (9th Cir. 2011).

17     On this motion, defendant argues that decertification is now

18 required by subsequent events and by intervening authority.

19 _____

20     [3] Employees of the "Tax" Line of Service, and of the "Systems
Process Assurance" and "Transaction Services" Divisions within the
21 Assurance line were excluded from the requested class, because
plaintiffs, who were Attest Associates, could not demonstrate
22 "typicality" with those other employees under Rule 23(a).
Campbell, 253 F.R.D. at 594, 604.  Senior Associates in the Attest
23 Division were excluded from the requested class because plaintiffs
could not demonstrate that common questions of law or fact would
24 "predominate" over any question affecting only individual members,
under Rule 23(b)(3).  Id., 253 F.R.D. at 596 & 604.  The Senior
25 Associates seek class certification in a separate lawsuit.  See
Kress v. PricewaterhouseCoopers, LLP, Civ. No. 8:08-cv-965-LKK-GGH
26 (E.D. Cal.).

1  Plaintiffs oppose, asserting that the certification motion was
2  correctly decided, and should stand.

3  **II.   STANDARDS**

4      **A.   Class Decertification - Allocation of Burdens.**

5      A class certification order "may be altered or amended before
6  final judgment."   Fed. R. Civ. P. 23(c)(1)(C).   Of course,
7  plaintiff, as the party seeking class certification, had the
8  initial burden "of affirmatively demonstrating that the class meets
9  the requirements of Federal Rule of Civil Procedure 23." <u>Mazza v.</u>
10 <u>American Honda Motor Co., Inc.</u>, 666 F.3d 581, 588 (9th Cir. 2012);
11 <u>United Steel Workers v. ConocoPhillips Co.</u>, 593 F.3d 802, 807 (9th
12 Cir. 2010) ("The party seeking class certification bears the burden
13 of demonstrating that the requirements of Rules 23(a) and (b) are
14 met").

15     According to the normal practice followed in regard to
16 motions, the proponent of a motion bears the initial burden of
17 showing that the motion should be granted.   However, in the case
18 of a motion to decertify a class, the Ninth Circuit rule is that
19 the party resisting the motion bears the burden of showing that the
20 motion should not be granted.   <u>Marlo v. United Parcel Service,</u>
21 <u>Inc.</u>, 639 F.3d 942, 947 (9th Cir. 2011).   The resisting party meets
22 this burden by showing that class certification is still warranted:

23         Thus, as to the class-decertification issue, Marlo, as
        "[t]he party seeking class certification [,] bears the
24         burden of demonstrating that the requirements of Rules
        23(a) and (b) are met."
25

26 ////

1    <u>Id.</u>, 639 F.3d at 947.[4]

2    **B.    Class Decertification - Rule 23(a).**

3         Class certification is proper, and therefore may withstand a

4    motion to decertify, only "if the trial court is satisfied, after

5    a rigorous analysis, that the prerequisites of Rule 23(a) have been

6    satisfied." <u>General Telephone Co. of Southwest v. Falcon</u>, 457 U.S.

7    147, 161 (1982).  The Federal Rules provide:

8         One or more members of a class may sue or be sued as
          representative parties on behalf of all members only if:
9         (1) the class is so numerous that joinder of all members
          is impracticable ["numerosity"];(2) there are questions
10        of law or fact common to the class ["commonality"]; (3)
          the claims or defenses of the representative parties are
11        typical of the claims or defenses of the class
          ["typicality"]; and (4) the representative parties will
12        fairly and adequately protect the interests of the class
          ["adequacy" (of representation)].
13
     Fed. R. Civ. P. 23(a).
14
15        In the present context – a lawsuit alleging mis-classification

16   of employees as exempt under California law – plaintiffs bear the

17   burden of showing that the mis-classification "'was the rule rather

18   than the exception.'" <u>Marlo</u>, 639 F.3d at 947, <u>quoting</u> <u>Marlo v.</u>

19   <u>United Parcel Service, Inc.</u>, 251 F.R.D. 476, 482 (C.D. Cal. 2008).

20   **C.    Class Decertification - Rule 23(b).**

21        In addition, class certification is proper only if "at least

22   one of the requirements of Rule 23(b)" is satisfied.  <u>Ellis v.</u>

23   <u>Costco Wholesale Corp.</u>, 657 F.3d 970, 979-80 (9th Cir. 2011).  That

24   _____

25        [4] <u>Quoting</u> <u>United Steel Workers</u>, 593 F.3d at 807, which holds
     that the proponent of the motion to <u>certify</u> the class bears the
26   burden of proof.  Of course, this court is bound by the Ninth
     Circuit rule.

1  rule provides:

2     A class action may be maintained if Rule 23(a) is
       satisfied and if: ... [1] the court finds that the
3     questions of law or fact common to class members
       predominate over any questions affecting only individual
4     members, and [2] that a class action is superior to
       other available methods for fairly and efficiently
5     adjudicating the controversy.

6  Fed. R. Civ. P. 23(b)(3).

7        The court must be satisfied that the party that bears the

8  burden has "affirmatively demonstrate[d]" that "there are in fact

9  sufficiently numerous parties, common questions of law or fact,

10  etc." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. ___, 131 S. Ct.

11  2541, 2551-52 (2011). The Rule 23(b)(3) predominance inquiry asks

12  whether the proposed classes "are sufficiently cohesive to warrant

13  adjudication by representation. The focus is on the relationship

14  between the common and individual issues." Mevorah v. Wells Fargo

15  Home Mortgage (In re Wells Fargo Home Mortg. Overtime Pay

16  Litigation), 571 F.3d 953, 957 (9th Cir. 2009) (citations and

17  internal quotation marks omitted).[5]

18  **III. ANALYSIS - RULE 23(a)**

19     **A.   Numerosity.**

20        This court has previously found that plaintiffs have satisfied

21  the numerosity requirement. Campbell, 253 F.R.D. at 594.

22  Defendant does not challenge that finding and it is re-affirmed

23  here.

24  _____

25     [5] Quoting Local Joint Executive Bd. of Culinary/Bartender
    Trust Fund v. Las Vegas Sands, Inc., 244 F.3d 1152, 1162 (9th
26  Cir.), cert. denied, 534 U.S. 973 (2001), and Hanlon v. Chrysler
    Corp., 150 F.3d 1011, 1022 (9th Cir. 1998).

**B.    Commonality.**

To establish commonality, plaintiffs must establish "that there are one or more questions of law or fact common to the class." <u>Ellis</u>, 657 F.3d at 980, <u>citing</u> Fed. R. Civ. P. 23(a)(2). It is sufficient that there be one common question "apt to drive the resolution of the litigation." <u>Wal-Mart</u>, 131 S. Ct. at 2556 ("We quite agree that for purposes of Rule 23(a)(2) even a single [common] question will do") (internal quotation marks omitted):

> What matters to class certification ... is not the raising of common "questions" – even in droves – but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.  Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

<u>Wal-Mart</u>, 131 S. Ct. at 2551.[6]  This court has previously found that plaintiffs have satisfied the commonality requirement. <u>Campbell</u>, 253 F.R.D. at 594-95.  Defendant challenges the finding on the grounds that subsequent events and intervening legal authority have undermined it.  However, plaintiffs have once again met their initial burden to show the existence of common questions, and nothing in defendant's submissions refutes that showing.[7]

**1.    Common Contentions – Discretion and Independent Judgment.**

Among defendant's affirmative defenses in this case is that plaintiffs were properly classified as "exempt" from the overtime

---

[6] <u>Quoting</u> Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U.L. Rev. 97, 131–132 (2009).

[7] Defendant's evidence goes to "predominance," which is discussed below.

1   pay requirements.[8]  The two exemptions defendant still asserts are:

2   the "learned profession" exemption; and the "administrative

3   employee" exemption.  One requirement that both of these exemptions

4   have in common is that the employee must regularly and customarily

5   use "discretion and independent judgment" in his or her work.  Cal.

6   Labor Code § 515(a); Cal. Code Regs., tit. 8, § 11040(1)(A)(2)(b)

7   (administrative exemption) & 11040(1)(A)(3)(c) (professional

8   exemption); Campbell, 253 F.R.D. at 599-600.

9          The term discretion and independent judgment "implies
           that the person has the authority or power to make an
10         independent choice, free from immediate direction or
           supervision and with respect to matters of
11         significance."  Former 29 C.F.R. § 541.207(a).
           "Discretion and independent judgment involves the
12         comparison and evaluation of possible courses of
           conduct, and acting or making a decision after
13         considering various possibilities."

14  Campbell, 253 F.R.D. at 600, quoting Nordquist v. McGraw-Hill

15  Broadcasting Co., 32 Cal. App.4th 555, 564 (5th Dist. 1995); see

16  also, 2002 Update of The DLSE Enforcement Policies and

17  Interpretations Manual (Revised) ("2002 Revised DLSE Manual") ¶

18  53.3.8, & 53.3.8.1 (same).[9]

19         To meet their initial burden on this decertification motion,

20

21  _____

22         [8] The court notes that under California law, "exemptions from
    statutory mandatory overtime provisions are narrowly construed."
23  Ramirez v. Yosemite Water Co., Inc., 20 Cal.4th 785, 794 (1999).

24         [9] The interpretations of the California Department of Labor
    Standards & Enforcement ("DLSE") are not binding on this court, but
25  they are helpful where, as here, they appear to carry out the
    intent of the law.  See Harris, 53 Cal.4th at 190 ("Although we
26  generally give DLSE opinion letters 'consideration and respect,'
    it is ultimately the judiciary's role to construe the language").

plaintiffs must show that there is common proof that will determine the common question of whether Attest Associates exercise discretion and independent judgment in their work:

> To show that an exemption policy resulted in widespread misclassification, there has to be some common proof that allows a fact-finder to make a class-wide determination.... The need for common proof recognizes that a plaintiff's evidence should have some common application to class members in order to provide a basis for the jury to find that "misclassification was the rule rather than the exception ...."

Marlo, 251 F.R.D. at 484.

Plaintiffs have met their initial burden. They have made a legal and factual showing tending to refute the claim that the Attest Associates, are allowed to, or in fact do, exercise discretion and independent judgment. For example, plaintiffs have directed the court's attention to the deposition testimony of PwC's 30(b)(6) witness, Debbie McBee (Kershaw Decl. Exh. 5, ECF No. 556-1 at pp. 67-88), which indicates that an internal audit manual gives specific instructions on how Associates are to assist in the audit, what specific types of testing should be done, how the testing should be done, and what internal control framework should be followed.

Plaintiffs have also presented evidence that not only is everything the Associates do reviewed, but in essence, the Associates cannot make a move without first submitting it for the independent judgment of a supervisor. For example, even after an Associate has completed a "step" in an audit, nothing happens with regard to that step until a supervisor has reviewed all the

1  documentation going into the step and then made his or her own

2  judgment to approve it.  See Depo. of Ashlee Pierce (Kershaw Decl.

3  Exh. 24, ECF No. 556-8, pp. 24-34).

4        **2.    Common Contentions – Learned Profession.**[10]

5        The  first  exemption  defendant  claims  is  the  "learned

6  profession" exemption.  To prevail on the merits of this defense,

7  defendant will have to show that an Attest Associate is a person

8  primarily engaged in:

9        Work requiring knowledge of an advanced type in a field
        [of]  science  or  learning  customarily  acquired  by  a
10       prolonged course of specialized intellectual instruction
        and study ...; [and]

11
        Who customarily and regularly exercises discretion and
12       independent judgment ....

13 Cal. Code Regs., tit. 8 § 11040(1)(A)(3)(b).

14       As a threshold showing on the merits, defendant will have to

15 show  that  the  Attest  position  "requires  advanced  knowledge

16 customarily  acquired  by  a  prolonged  course  of  specialized

17 intellectual  instruction."  Solis v. Washington, 656 F.3d 1079,

18 1081  (9th  Cir.  2011).   To  qualify  for  the  exemption,  the

19 instruction must be "sufficiently specialized" and "relate directly

20 to  the  position."   Id., at 1088-89.   Indeed, "[t]he  phrase

21 'customarily  acquired  by  a  prolonged  course  of  specialized

22 intellectual  instruction'  restricts  the  exemption  to  professions

23 where specialized academic training is a standard prerequisite for

24

───────────────

25       [10] One common contention – whether a professional license is
   required for this exemption – has been resolved in the negative by
26 the Ninth Circuit.  See Campbell, 642 F.3d 820.

1  entrance into the profession." Id., at 1084 (emphases added).[11]

2      It is apparent, then, that this exemption presents a common

3  question: does acceptance into the Attest position require, as a

4  standard prerequisite, advanced knowledge customarily acquired by

5  a prolonged course of specialized academic instruction?  It is also

6  apparent on its face that this exemption is susceptible to common

7  proof.   One  simple  example  of  common  proof  here  would  be  the

8  resumes of Attest Associates.   That evidence would tend to show

9  whether or not Associates have the supposedly required academic

10  training.   Another  example  of  common  proof  is  the  testimony  of

11  hiring  managers  to  establish  whether  or  not  the  academic

12  credentials are a standard prerequisite for the hiring of an Attest

13  Associate.

14      Plaintiffs have in fact, directed the court's attention to the

15  declaration of Paul F. White (ECF No. 262), submitted by defendant

16  in  support  of  its  earlier  summary  judgment  motion.    That

17  declaration contains several tables purporting to show the academic

18  credentials of Attest Associates.  The chart (Exh. F), shows a wide

19  variety of degree types awarded to the class members.  There are

20  mostly  Bachelor's,  Master's  and  MBA  degrees,  and  most  of  the

21  degrees  are  in  Business  and  International  Business,  Economics,

22  Accounting and Public Accounting, Management, Finance, Commerce,

23

24  ───────────

25        [11]  Both  parties  appear  to  accept  the  federal  law  and
   regulations,  and  the  Ninth  Circuit  interpretation  thereof,  as  at
26  least providing relevant guidance to this court in construing the
   state law and regulations.

1   Statistics and Business Administration.  However, there are also

2   a "CAAP" certificate, and several Associate's Degrees.    In

3   addition, some of the degrees are in Systems Technology, General

4   Education, Physical Education, General Coursework, Information and

5   Computer Science, "None," History, Mass Communications,

6   Applications and Mathematics, Microbiology, General Studies,

7   "Radio, TV, and Film," English, "Science and Technique Japanese,"

8   Computer Applications, Zoology, Women's Studies and Info Systems

9   Management.

10      Plaintiffs have also offered the testimony of defendant's own

11  Rule 30(b)(6) witness, Kathleen Harada (Kershaw Decl. Exh. 1, ECF

12  No. 556-1, pp. 1-16), on this point.  Ms. Harada testified that

13  although "it's preferred" for an applicant to have an accounting

14  degree or to "show that you've taken the accounting courses" needed

15  to sit for the CPA exam, nevertheless "[y]ou could be considered"

16  for the position even if the applicant lacked the educational

17  requirements needed to sit for the CPA exam.  (Harada Decl. ECF

18  pp. 9-10.)

19      Plaintiffs have thus met their initial burden for

20  decertification purposes, that they can present common proof that

21  the prolonged study requirement is not a standard prerequisite for

22  the job of Attest Associate, and therefore that Associates are not

23  covered by the "learned profession" exemption.  Plaintiffs have

24  shown that there is common proof that defendant has cast its

25  employment net wide enough to accept as Associates, people without

26  "specialized" academic training.  See Solis, 656 F.3d at 1088 ("An

1   educational requirement that may be satisfied by degrees in fields

2   as diverse as anthropology, education, criminal justice, and

3   gerontology does not call for a "course of specialized intellectual

4   instruction").

5          **3.   Common Contentions – The Administrative Exemption.**

6          Defendant next asserts that plaintiffs are exempt because they

7   are "administrative" employees.   Plaintiffs bear the burden of

8   establishing that they can present common proof on this exemption.

9   The exemption applies to an employee:

10          (a) ... [w]hose duties and responsibilities involve ...
            [t]he performance of office ... work directly related to
11          management policies or general business operations of
            his/her employer or his employer's customers; and
12
            (b) Who customarily and regularly exercises discretion
13          and independent judgment; and ...

14          (d) Who performs under only general supervision work
            along specialized or technical lines requiring special
15          training, experience, or knowledge; ... and

16          (f) Who is primarily engaged in duties that meet the
            test of the exemption.
17

18   Cal. Code Regs., tit. 8, § 11040(1)(A)(2).

19          Accordingly, common contentions that plainly present

20   themselves are: (1) do the Attest Associates perform work directly

21   related to the management policies or general operations of PwC or

22   its clients; (2) do they customarily and regularly exercise

23   discretion and independent judgment; (3) do they work under only

24   general supervision; and (4) are they primarily engaged in exempt

25   work?

26          As discussed above, plaintiffs have met their initial burden

                                        13

1  of showing the existence of a common contention regarding

2  "discretion and independent judgment." Accordingly, they have met

3  their initial burden regarding this exemption.

4  **C.  Typicality and Adequacy**

5  Defendant argues that the named plaintiffs are not "typical"

6  of the class nor "adequate" representatives because they were not

7  good employees.  Defendant asserts that the named plaintiffs were

8  substandard performers, received poor performance reviews and had

9  limited audit experience.  Motion To Decertify at 47 (ECF p.55).

10 However, the named plaintiffs satisfy the typicality requirement

11 not because they were model employees, but because they present the

12 same common questions as are presented by the other class members.

13 For example, they present the common issues of whether their work

14 involved the exercise of discretion and independent judgment, and

15 whether they had to be "learned professionals" before they could

16 be hired as Associates.  In addition, as the court has already

17 found, they are adequate representatives because there is no

18 conflict of interest between the named plaintiffs and the class,

19 and counsel has ample experience in these types of cases.  The

20 court re-affirms the findings of typicality and adequacy.

21 **IV.  ANALYSIS - RULE 23(b)(3)**

22 **A.  Predominance.**

23 Defendant has again submitted a small mountain of declarations

24 to show that the individual issues will predominate over common

25 issues.

26 ////

1        **1.    Learned Profession.**

2        The common contention here, as discussed above, is whether a

3   "prolonged course of specialized intellectual instruction and

4   study" is a standard prerequisite for the position of Attest

5   Associate.

6        Defendant argues that individual issues predominate because

7   the court must determine how the Associates' educations were

8   "customarily acquired."  Motion To Decertify at p.37 (ECF p.45).

9   But that is not what the court must determine.   The learned

10  profession exemption does not ask where or how Attest Associates

11  acquired their educations.   It asks whether their occupation –

12  Attest Associate – is one which customarily requires a prolonged

13  course of specialized intellectual instruction and study.   Thus,

14  it is enough to determine whether or not PwC requires such an

15  educational background of its potential hires.   This should be a

16  simple matter of common proof.   PwC can submit resumes, together

17  with its hiring policies.   Plaintiffs can submit resumes, along

18  with whatever evidence they think shows that PwC did not require

19  such an education prior to hire.

20       Defendant also argues that the threshold inquiry here is a

21  "fact-specific" inquiry into what <u>work</u> each Associate does, citing

22  the Ninth Circuit's summary judgment decision in <u>Campbell</u>, 642 F.3d

23  at 827.   Motion To Decertify (ECF No. 515-1) p.37 (ECF p.45).

24  Because each Associate's work must be examined, defendant argues,

25  there can be no common proof.   Nothing in the decision, however,

26  says or implies that an examination of the individual work of every

1  single Associate is a "threshold" requirement for certification of
2  the class.

3      Defendant further argues that the Ninth Circuit did not really
4  mean it when it held that the "prolonged course of specialized
5  intellectual instruction," was a "standard prerequisite" for the
6  "learned profession" exemption.  Solis, 656 F.3d at 1084.  First,
7  defendant attempts to defuse the "standard prerequisite" language
8  by noting that it occurs only in a "singular reference."  However,
9  defendant does not explain the significance of its appearing only
10 once in the decision.    Next, defendant takes the "standard
11 prerequisite" phrase apart, and attempts to define one part of it
12 – "standard" – essentially out of existence.    According to
13 defendant, the Merriam Webster Dictionary in 1983 defined
14 "standard" to mean "typical" or "usual," and therefore a standard
15 prerequisite does not refer to an actual requirement.  Defendant
16 does not however, define "prerequisite," thus presenting only one-
17 half of an argument.

18     In fact, the Ninth Circuit's use of the term "standard
19 prerequisite" is entirely consistent with its overall decision in
20 the case – the prolonged study requirement is a <u>threshold</u>
21 requirement that must be established before the court can find that
22 an employee is exempt under the learned profession exemption.[12]

23 _____

24     [12] In addition, the Ninth Circuit has, in other contexts, used
   "standard prerequisites" to refer to actual requirements, not
25 simply typical or usual ones.  <u>See</u> <u>Syverson v. IBM Corp.</u>, 472 F.3d
   1072, 1078-79 (9th Cir. 2007) (listing the "standard prerequisites"
26 for "the application of offensive nonmutual issue preclusion").

Nothing in <u>Solis</u> indicates that the court meant by "standard prerequisite" anything other than a <u>requirement</u> that must be met <u>before</u> qualifying for the position.

### 2.   Discretion and Independent Judgment.

This court previously found that the mere fact that Associates were supervised might not be sufficient to establish that the "administrative" employee exemption did not apply. However, looking at the actual work done by Associates, the court found that the work was sufficiently similar that common issues would predominate.

Plaintiff has again met its initial burden to show that common issues predominate here. In response, defendant has submitted many declarations purporting to show how different the actual work is that Associates do. In fact, the declarations do show a wide variety of work by Associates. However, in the key area of whether that work involves the exercise of discretion and independent judgment, defendant has failed to show that individual issues will predominate.

Nothing in the varied work descriptions or seniority levels described in the declarations leads to the conclusion that some Associates <u>customarily</u> exercise discretion and independent judgment, while others do not.[13] To the contrary, the declarations

---

[13] The Declaration of Andrea Ekstrom (ECF No. 517-10 / Thomasch Decl., Exh. T25) presents one exception. Ekstrom was hired by PwC as a Senior Associate and gave a Declaration in her capacity as a Senior Manager. Her Declaration asserts that in one case, an Associate under her supervision determined which documents were needed from a client, and obtained those documents from the

1  show that even when an Associate is working as the "in-charge" on

2  an engagement, his or her discretion and independent judgment, if

3  any, is cabined by the same level of close supervision.[14]

4      Defendant argues that an Attest Associate who reviews the work

5  of other Attest Associates, or who supervises other Attest

6  Associates, is necessarily exercising discretion and independent

7  judgment.  Defendant then produced evidence that several Attest

8  Associates engaged in reviewing or supervising other Attest

9  Associates.  However, exemption does not blindly follow a label,

10  as PwC itself argues.  Thus, merely stating that an Associate

11  engages in "supervising" interns, other employees, or even other

12  Associates, does not end the inquiry.  Nor does the assertion that

13  an Associate "completed" a review for another employee.  In fact,

14  the rare declarations that do specify what is actually involved in

15  these reviews make clear that they are simply recommendations that

16  are brought to a supervisor who then makes the independent judgment

17  about how to proceed.[15]

18  ──────────────────

19  client without getting authorization from Ekstrom.  However, a
    review of the submitted declarations from Attest Associates

20  themselves does not show this level of independence.  Thus, even
    accepting the Ekstrom Declaration at face value, it fails to show

21  that this level of independence was customary for Associates.

22  [14] For example, the Declaration of Laura Anderson (ECF No.
    517-2 / Thomasch Decl., Exh. T17), shows that although

23  Anderson was the "in-charge" on an engagement, all of her work
    was brought to her supervisor for the supervisor to make the

24  independent judgment about how to proceed.

25  [15] For example, the Declaration of Birgit Borgett (ECF No.
    517-4 / Thomasch Decl., Exh T19), shows that the Associate "in-

26  charge" performed a "first level of review" of the work of a more
    junior Associate on the engagement.  Borgett Decl. ¶ 13.  The

1   **B.    Superiority.**

2        The court has previously determined that class adjudication

3   is the superior method of proceeding here.  Defendant argues that

4   a class action would be unmanageable because of the alleged

5   predominance of individual issues.  The court has already found

6   that individual issues will not predominate, and according re-

7   affirms its prior finding on superiority.[16]

8   **V.    ANALYSIS - INTERVENING AUTHORITY**

9        **A.    Vinole v. Countrywide Home Loans, Inc.**

10       In Vinole v. Countrywide Home Loans, Inc., 571 F.3d 935 (9th

11  Cir. 2009), the Ninth Circuit affirmed the district court's denial

12  of class certification for a proposed class of employees classified

13  as "outside sales employees," and therefore exempt from

14  California's overtime wage requirements.  Vinole holds that it

15  would be error to "adopt a rule that class certification is

16  warranted under Rule 23(b)(3) whenever an employer uniformly

17  classifies a group of employees as exempt, notwithstanding the

18  _____

19  reviewed Associate's work was then subject to another level of
20  review by a more senior person.  Id.

21       [16] In addition, defendant asserts that there is no common
    question in the claims that it denied meal periods and rest breaks.
22  The common question is: whether class members were illegally denied
    meal periods and rest breaks.  The lawfulness of the practice of
23  course, depends on the common questions applicable to the
    exemptions, as discussed above.  There are no individual issues
24  here.  The claim here is not that the employees did not take the
    breaks – which would present individual issues – but that they were
25  not "provided" to the class members.  See Brinker Restaurant Corp.
    v. Superior Court, 53 Cal.4th 1004, 1018 (2012) ("State law
26  obligates employers to afford their nonexempt employees meal
    periods and rest periods during the workday").

1  requirement that the district court conduct an individualized

2  analysis of each employee's actual work activity." <u>Id.</u>, 571 F.3d

3  at 946 ("[w]e decline to adopt such an approach because ... we hold

4  that a district court abuses its discretion in relying on an

5  internal uniform exemption policy to the near exclusion of other

6  factors relevant to the predominance inquiry").

7      This holding is entirely consistent with this court's 2008

8  certification decision.  In that decision, this court expressly

9  acknowledged the teaching of the California Supreme Court, on the

10  merits of the exemptions, that "'the court should consider, first

11  and foremost, how the employee actually spends his or her time.'"

12  <u>Campbell</u>, 253 F.R.D. at 600, <u>quoting</u> <u>Ramirez</u>, 20 Cal.4th at 802.

13  Although <u>Ramirez</u> was opining on how the merits of the exemption

14  should be determined, the requirement of examining how the employee

15  actually spends his or her time spills over into the class question

16  as well.  And that is exactly what this court did.[17]  After

17  examining the "small mountain" of declarations submitted by PwC,

18  this court found that the job duties among Attest Associates was

19  sufficiently similar to warrant class treatment.  <u>Id.</u>, 253 F.R.D.

20  _____

21      [17] Defendant does not specifically state what holding or
   principle of <u>Vinole</u> undermines this court's prior decision on class
22  certification.  The court therefore infers that it has correctly
   guessed PwC's intention, since it is the major holding of <u>Vinole</u>
23  applicable to this case, and it is also the principle discussed at
   the citation provided by PwC in its main brief urging
24  decertification.  <u>See</u> Motion To Decertify at p.25 (ECF p.33).  In
   its Reply, PwC simply includes <u>Vinole</u> in a footnoted string cite
25  for the proposition that there have been "watershed developments"
   since the certification order was issued.  <u>See</u> PwC Reply (ECF No.
26  529) at p.1 n.2 (ECF 8 n.2).

1   at 604-05.  However, this factual examination also convinced this

2   court that the job duties of Senior Associates were sufficiently

3   diverse that they should be excluded from the class encompassing

4   junior Associates.  <u>Id.</u>, at 605.

5       **B.   <u>In re Wells Fargo Home Mortg. Overtime Pay Litigation</u>.**

6       <u>Mevorah v. Wells Fargo Home Mortgage (In re Wells Fargo Home</u>

7   <u>Mortg. Overtime Pay Litigation)</u>, 571 F.3d 953 (9th Cir. 2009), is

8   a companion case to <u>Vinole</u>.  It also rejects any rule creating "a

9   presumption that class certification is proper when an employer's

10  internal   exemption   policies   are   applied   uniformly   to   the

11  employees."   <u>Id.</u>, 571 F.3d at 958.   However, <u>Wells Fargo</u> also

12  acknowledges:

>       Of course, uniform corporate policies will often bear
13      heavily on questions of predominance and superiority.
        Indeed,   courts   have   long   found   that   comprehensive
14      uniform   policies   detailing   the   job   duties   and
        responsibilities of employees carry great weight for
15      certification purposes.

16

17  <u>Id.</u>

18      Here again, this court can discern nothing in the Ninth

19  Circuit   decision   that   undermines   this   court's   previous

20  certification decision.  To the contrary, this case, like <u>Vinole</u>,

21  teaches that this court should apply the principle that it did

22  apply in the certification decision – it is necessary to focus on

23  the actual jobs done by employees, and not exclusively focus on the

24  label attached to their jobs, or the employer's policies regarding

25  their work.

26  ////

1         **C.    Marlo v. United Parcel Service, Inc.**

2         In Marlo v. United Parcel Service, Inc., 639 F.3d 942 (9th

3    Cir. 2011), the employer had classified certain full time

4    supervisors ("FTS") as "executive and administrative" employees,

5    and thus exempt from the mandatory overtime pay requirements of

6    California's labor laws.  Plaintiff alleged that the supervisors

7    were mis-classified, and the district court certified a class, with

8    Marlo as their representative.  Later, the court decertified the

9    class, finding that the plaintiff had not established predominance,

10   and that he "has not come forward with common proof sufficient to

11   allow a fact-finder to make a class-wide judgment" as to the

12   supervisor positions previously certified.  Id., 639 F.3d at 945.

13        The Ninth Circuit affirmed the decertification of the class.

14   The court first affirmed the district court holding that plaintiff

15   bore the burden of proof on defendant's motion to decertify.  Id.,

16   639 F.3d at 947.  The Court then affirmed the district court

17   finding that plaintiff had not met his burden to show predominance

18   "as to these particular exemptions."  For example, plaintiff did

19   not provide evidence on whether the supervisors were "primarily

20   engaged" in exempt activities, or whether they customarily and

21   regularly exercised discretion and independent judgment.  Id., 639

22   F.3d at 945.

23        In the district court, the critical issue was whether

24   plaintiffs could present "common proof of misclassification."

25   Marlo v. United Parcel Service, 251 F.R.D. 476, 480 (C.D. Cal.

26   2008) (Pregerson, J.).  That court was careful to avoid weighing

                                    22

1  the evidence "or otherwise evaluat[ing] the merits of a plaintiff's

2  class claim."  Id., 251 F.R.D. at 481 n.2, citing Eisen v. Carlisle

3  & Jacquelin, 417 U.S. 156, 178 (1974).  But it also recognized that

4  "this principle does not prevent a court from comparing the class

5  claims, the type of evidence necessary to support a class-wide

6  finding on those claims, and the bearing of those considerations

7  on Rule 23 certification."  Id.  Once again, the court discerns

8  nothing in this Ninth Circuit decision that undermines its

9  certification decision.

### 1.   Use of "Policies and Procedures."

11   Marlo rejects, as did Wells Fargo and Vinole before it, the

12  idea that the class proponents can rely on the employer's "policies

13  and procedures" to establish sufficient evidence of predominance.

14  Marlo, 639 F.3d at 948.  This court did not rely on PwC's policies

15  and procedures, but rather examined the factual bases for the class

16  proponent's claim of predominance, as discussed above.

### 2.   Week-by-Week Examination to Determine Whether Employee is "Primarily Engaged" in Exempt Activities.

19   As PwC points out, Marlo states that the district court did

20  not err "in requiring a week-by-week determination of exempt

21  status."  Marlo, 639 F.3d at 948.  PwC argues from this, that this

22  court is required to conduct a week-by-week analysis of the job

23  duties of each and every PwC Attest Associate, and therefore, class

24  treatment makes no sense.

25   PwC's argument attempts to prove much too much.  First, the

26  fact that the district court in Marlo "did not err" does not mean

1   that a week-by-week analysis is required in every case.  In any

2   event, what the district court "did not err" in was in requiring

3   plaintiffs to <u>address</u> the "primarily engaged" requirement: "Equally

4   important, there is no indication that Plaintiff's evidence

5   addresses the 'primarily engaged' element of the exemption, and

6   specifically the week-by-week aspect of the analysis." <u>Marlo</u>, 251

7   F.R.D. at 486.  Nothing in the district court decision required an

8   explicit week-by-week analysis beyond a showing of "common proof."

9   The court was explicit about this:

> The Court does not suggest that a showing of the amount of time each individual spends on exempt versus nonexempt work is necessarily required to maintain a class action. A plaintiff could present common proof on this issue.

13   <u>Id.</u> Accordingly, the Ninth Circuit language must be understood to

14   affirm the district court's requirement of "common proof" to meet

15   the week-by-week analysis, not that individual proof of every

16   employee, every week was required.

17       This court's certification decision accepted the common proof

18   offered by both sides.  Nothing in PwC's little mountain of

19   declarations indicated that whether an Attest Associate was engaged

20   in exempt work depended upon which work-week the court examined.

21   To the contrary, the declarations showed the commonality of the

22   work, and gave no indication that this commonality would be

23   dissolved if viewed on a week-by-week basis.

24       Second, PwC's position is too sweeping an argument.

25   Notwithstanding all the common questions and common proof that

26   could be offered, and that were offered in this case, it is always

1  the case that an employee's work <u>could</u> be examined on a week-by-

2  week basis.  If that is all that is required to defeat a class, PwC

3  would have found the magic bullet that would eliminate most class

4  actions in the wage and hour context.  This court does not read

5  <u>Marlo</u>, nor any other pronouncement of the Ninth Circuit, or the

6  Supreme Court, so broadly.

7       **D.    <u>Campbell v. PricewaterhouseCoopers, LLP</u> (9th Cir.).**

8       On March 11, 2009, this court granted plaintiffs' motion for

9  summary adjudication, finding that they were ineligible for the

10 "professional" exemption.  That provision of California regulations

11 exempted "licensed" accountants, and members of "learned

12 professions," whether licensed or not.    <u>Campbell v.</u>

13 <u>PricewaterhouseCoopers, LLP</u>, 602 F. Supp.2d 1163 (E.D. Cal. 2009)

14 (Karlton, J.).  On June 15, 2011, the Ninth Circuit reversed,

15 holding that even though plaintiffs were not exempted by the

16 "licensed" accountants provision, they could still be exempted

17 under the "learned profession" provision.  <u>Campbell</u>, 642 F.3d at

18 833 (the "professional" exemption is not "categorically

19 inapplicable to unlicensed accounts as a matter of law"); <u>accord</u>,

20 <u>Zelasko-Barrett v. Brayton-Purcell, LLP</u>, 198 Cal. App.4th 582, 588

21 (1st Dist. 2011) (same).

22      The Ninth Circuit further determined that fact questions

23 precluded summary judgment on whether the "learned profession"

24 exemption applied.  Specifically, the Court found that the

25 plaintiffs' "actual job duties and responsibilities" – the "crucial

26 touchstone for the professional exemption" – was subject to

1  "myriad" and "voluminous" conflicting evidence:

> The parties dispute everything from what Attest
> associates actually do during audit engagements to
> whether PwC can reasonably expect unlicensed junior
> accountants to perform anything more than menial,
> routinized work.  The wide array of evidence from both
> parties includes depositions from class members and
> other PwC employees, internal PwC manuals explaining job
> roles and procedures for audit engagements, and detailed
> training documents for PwC's auditing software.

7  Campbell, 642 F.3d at 830.  Finally, the Court determined that only

8  the fact-finder could "weigh this voluminous conflicting evidence

9  and determine whether Plaintiffs meet the standards of the

10 professional exemption."  Id.

11     Thus, the Ninth Circuit decision in Campbell did not address

12 class certification.  Rather, it was a decision that: (1) on the

13 law, plaintiffs were not categorically excluded from the "learned

14 profession" exemption solely by virtue of their lack of a

15 professional license; and (2) material issues existed with respect

16 to the "learned profession" exemption which precluded a summary

17 adjudication on the merits.

18     PwC argues that the Ninth Circuit decision in Campbell

19 undermined what it seems to think was this court's view that a job

20 title could determine exemption status.  See Motion To Decertify

21 at p.38 (ECF p.46) ("Having the Job Title of Attest Associate

22 Cannot Resolve the Applicability of the Professional Exemption").

23 It also argues that this court was mistaken on placing the focus

24 "on whether the individual is employed in a qualifying occupation,"

25 since Marlo makes clear that the focus is on "an employee's 'actual

26 job duties, not the employee's job title or professional field.'"

1   Motion at p.38 (ECF p.46).

2        The Ninth Circuit decision does not undermine this court's

3   language relating to class certification.  This court's language,

4   cited by PwC as now hopelessly incorrect, referred to a phrase that

5   came out of the governing regulation: "But the test considers

6   whether an employee is 'primarily <u>engaged in an occupation</u> commonly

7   recognized as learned.'"  <u>Campbell</u>, 253 F.R.D. at 598 (emphasis

8   added), <u>quoting</u> Cal. Code Regs., tit. 8 § 11040(1)(A)(3)(b).[18]

9   Notwithstanding the shifting focus in the language of the

10  regulation from the "employee," to the "position" or to the

11  "occupation," this court's certification order focused not on the

12  title, but the work performed, as required by <u>Marlo</u>.

13       **E.   <u>Wal-Mart v. Dukes</u>.**

14       In <u>Wal-Mart Stores, Inc. V. Dukes</u>, 564 U.S. ___, 131 S. Ct.

15  2541 (2011), plaintiffs alleged that pay and promotion decisions

16  at Wal-Mart were generally committed to local managers' broad

17  discretion, and that that discretion was exercised "'in a largely

18  subjective manner.'"  <u>Wal-Mart</u>, 131 S. Ct. at 2547.  This

19  discretion, according to plaintiffs, was exercised

20  disproportionately in favor of male employees, leading to an

21  unlawful disparate impact on the female employees.  Since Wal-Mart

22  _____

23       [18]  The "position" versus "employee" issue is clouded by
    language that can be found throughout the cases and regulations
24  that mix up those terms.  <u>See, e.g.</u>, Cal. Code Regs., tit. 8, §
    11040(1)(A)(3) (focuses on "occupation"); <u>Id.</u> § 11040(1)(A)(3)(b)
25  (focuses on "employee" engaged in the performance of described
    work); 29 C.F.R. § 541.301(a) (focuses on "employee's" primary
26  duty) (federal regs are incorporated into the Wage Order).

1    was aware of this, its failure to correct the situation amounted

2    to disparate treatment in violation of Title VII, plaintiffs

3    alleged.

4        The case turned on "commonality." <u>Wal-Mart</u>, 131 S. Ct. at

5    1550 ("[t]he crux of this case is commonality"). Commonality, in

6    turn, "requires the plaintiff to demonstrate that the class members

7    'have suffered the same injury.'" <u>Wal-Mart</u>, 131 S. Ct. at 2551.[19]

8    The claims of the class members "must depend upon a common

9    contention." <u>Id.</u> It is a "common contention" if "determination

10   of its truth or falsity will resolve an issue that is central to

11   the validity of each one of the claims in one stroke." <u>Id.</u> The

12   Court Majority was unable to grasp any common contentions. There

13   was no common policy involved, it found, other than the policy to

14   grant discretion to local managers, and therefore no common

15   contention.[20]

16       It is not clear to this court what is the basis for PwC's

17   assertion that the record, viewed in light of <u>Wal-Mart</u>, "makes

18   clear that Plaintiffs' claims and PwC's defenses cannot possibly

19   be tried on a class-wide basis." Motion To Decertify at p.11 (ECF

20   p.19). In <u>Wal-Mart</u>, commonality was not shown because plaintiffs

21   "have not identified a common mode of exercising discretion that

22   _____

23       [19] <u>Quoting</u> <u>General Telephone Co. of Southwest v. Falcon</u>, 457
24   U.S. 147, 157 (1982).

25       [20] The Court also rejected plaintiffs' assertion that the
     back-pay claims were appropriate for a Rule 23(b)(2) class. That
     appears to have no relevance to this lawsuit, which involves a Rule
26   23(b)(3) class.

1   pervades the entire company." <u>Wal-Mart</u>, 131 S. Ct. at 2554-55.

2       This court's certification decision was consistent with <u>Wal-</u>
3   <u>Mart</u>.  It found that plaintiffs had identified common contentions,
4   including whether Attest Associates exercised discretion and
5   independent judgment.  Moreover, the common questions are capable
6   of generating common answers.   As shown above, the evidence
7   presented thus far permits this court to determine "in one stroke"
8   whether the Associates have done so.  Other common questions are
9   whether the Associates are performing work described in the
10  regulation defining the "learned profession" exemption, and whether
11  they possess the required academic learning to qualify for that
12  exemption.

13  **VI.    CONCLUSION**

14      For the foregoing reasons, the motion to decertify the class
15  is **DENIED.**

16      IT IS SO ORDERED.

17      DATED:  November 28, 2012.

18

19

20                        _____
21                        LAWRENCE K. KARLTON
                          SENIOR JUDGE
22                        UNITED STATES DISTRICT COURT

23

24

25

26