William A. Kershaw (State Bar No. 057486)
Lyle W. Cook (State Bar No. 148914)
Stuart C. Talley (State Bar No. 180374)
KERSHAW, CUTTER & RATINOFF, LLP
401 Watt Avenue
Sacramento, CA 95864
Telephone: (916) 448-9800
Facsimile:  (916) 669-4499

James P. Ulwick (Admitted *Pro Hac Vice*)
Jean E. Lewis (State Bar No. 148717)
KRAMON & GRAHAM, P.A.
One South Street, Suite 2600
Baltimore, Maryland  21202
Telephone: (410) 752-6030
Facsimile:  (410) 539-1269

*Attorneys for Plaintiffs and the Class*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON CAMPBELL and SARAH SOBEK, individually, and on behalf of all other similarly situated current and former employees of PricewaterhouseCoopers, LLP,<br><br>     Plaintiffs,<br><br>          vs.<br><br>PRICEWATERHOUSECOOPERS, LLP, a Limited Liability Partnership,<br><br>     Defendant. | Case No.: 06-CV-02376-TLN-AC<br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:  January 29, 2015<br>Time:  2:00 p.m.<br>Courtroom 2, 15th Floor<br>Assigned to Judge Troy L. Nunley |

## TABLE OF CONTENTS

Page(s)

I.     PRELIMINARY STATEMENT ..................................................................... 1

II.    THE LITIGATION ...................................................................................... 1

    A.     Plaintiffs' Underlying Allegations ................................................... 1

    B.     PWC Denies Plaintiffs' Allegations ................................................ 2

    C.     Case History and Proceedings to Date ............................................. 3

III.   THE SETTLEMENT .................................................................................. 7

    A.     The Proposed Settlement Class ....................................................... 7

    B.     Settlement Relief ............................................................................ 7

    C.     Settlement Administrator ................................................................ 9

    D.     The Notice Program ....................................................................... 9

    E.     Class Action Fairness Act Notice ................................................. 10

    F.     The Release ................................................................................. 10

    G.     Opportunity to Opt Out and Object ............................................... 11

    H.     Termination of Settlement ........................................................... 11

    I.     Class Representatives' Application for Service Awards ................... 11

    J.     Class Counsel's Application for Attorneys' Fees, Costs and Expenses ............... 12

IV.    LEGAL ANALYSIS ................................................................................. 12

    A.     Preliminary Approval Standard ..................................................... 12

    B.     The Proposed Settlement Class Satisfies the Requirements of Rule 23 ............... 13

    C.     Preliminary Approval of the Settlement is Appropriate ................... 15

## <u>TABLE OF CONTENTS</u>

Page(s)

V.     THE FORM OF NOTICE AND MEANS OF DISSEMINATION SHOULD
       BE APPROVED ........................................................................................................... 20

VII.   CONCLUSION ............................................................................................................. 22

MEMORANDUM IN SUPPORT OF PLS.' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL

# TABLE OF AUTHORITIES

## FEDERAL CASES

Page(s)

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ................................................................................................ 13

*Ball v. Petrol Transp., Inc.*, No. CV-F-04-5370-AWI-LJO,
  2006 U.S. Dist. LEXIS 35959 (E.D. Cal. June 2, 2006) ...................................... 15

*Birch v. Office Depot, Inc.*, Case No. 06-cv-1690,
  2007 U.S. Dist. LEXIS 102747 (S.D. Cal. Sept. 28, 2007) .................................. 18

*Brady v. Deloitte & Touche LLP*, No. C 08-177 SI,
  2012 U.S. Dist. LEXIS 42118 (N.D. Cal. Mar. 27, 2012) ................................... 19

*Brady v. Deloitte & Touche LLP*, No. 12-16384,
  2014 U.S. App. LEXIS 19283 (9th Cir. Oct. 9, 2014) ......................................... 19

*Campbell v. PricewaterhouseCoopers, LLP*,
  642 F.3d 820 (9th Cir. 2011) ......................................................................... *passim*

*Churchill Vill, LLC, v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004) ................................................................................ 21

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) .............................................................................. 15

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ...................................................................... 13,16,17

*In re M.L. Stern Overtime Litig.*, No. 07-CV-0118-BTM (JMA),
  2009 U.S. Dist. LEXIS 31650 (S.D. Cal. Apr. 13, 2009) ................................... 15

*In re Portal Software Sec. Litig.*, No. C-03-5138 VRW,
  2007 U.S. Dist. LEXIS 51794 (N.D. Cal. June 30, 2007) .............................. 15,16

*In re Xoma Corp. Sec. Litig.*, No. C-91-2252 TEH,
  1992 U.S. Dist. LEXIS 10502 (N.D. Cal. July 14, 1992) ................................... 16

*In re Tableware Antitrust Litig.*,
  484 F. Supp. 2d 1078 (N.D. Cal. 2007) .............................................................. 16

*Mendoza v. Tucson Sch. Dist. No. 1*,
  623 F.2d 1338 (9th Cir. 1980) .......................................................................... 21,22

*Mullane v. Central Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950) .............................................................................................. 21

*O'Donovan v. Cashcall, Inc.*,
  278 F.R.D. 479 (N.D. Cal. 2011) ......................................................................... 19

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) ................................................................................ 19

-iii-

## <u>TABLE OF AUTHORITIES, Cont.</u>

Page(s)

*Pippins v. KPMG LLP*,
   759 F.3d 235 (2d Cir. 2014)..................................................................... 19,20

*Rippee v. Boston Mkt. Corp.*, No. 05-cv-1359,
   2006 U.S. Dist. LEXIS 101136 (S.D. Cal. Oct. 10, 2006) .............................. 18

*Util. Reform Project v. Bonneville Power Admin.*,
   869 F.2d 437 (9th Cir. 1989)........................................................................ 15

*Van Bronkhorst v. Safeco Corp.*,
   529 F.2d 943 (9th Cir. 1976)........................................................................ 15

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ................................................................................... 6

*Young v. Polo Retail*, No. C-02-4546 VRW,
   2006 U.S. Dist. LEXIS 81077 (N.D. Cal. Oct. 25, 2006).......................... 13,16

### STATE CASES

*Brinker Restaurant Corp. v. Superior Court*,
   53 Cal. 4th 1004 (2012) ................................................................................ 19

### FEDERAL STATUTES

28 U.S.C. § 1715 ................................................................................................ 10

29 U.S.C. §§ 201-219......................................................................................... 19

Federal Rules of Civil Procedure
   Rule 23 ................................................................................................ *passim*
   Rule 30(b)(6).................................................................................................. 4

### STATE STATUTES

Business & Professions Code
   Section 5051....................................................................................................
   Section 5053....................................................................................................
   Sections 17200, *et seq.* ................................................................................... 3

California Labor Code
   Section 203..................................................................................................... 3
   Section 226..................................................................................................... 3
   Section 510..................................................................................................... 3
   Section 512..................................................................................................... 3
   Section 1174................................................................................................... 3
   Section 1194................................................................................................... 3

MEMORANDUM IN SUPPORT OF PLS.' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL

1

## **TABLE OF AUTHORITIES, Cont.**

2

Page(s)

3

### **MISCELLANEOUS**

*Manual for Complex Litigation (Fourth)* (2004)
    § 21.632..........................................................................................................13
    § 30.41..........................................................................................................15,16

4 Herbert B. Newberg, *Newberg on Class Actions* (1992)
    § 8.32..........................................................................................................21
    § 11.25..........................................................................................................13,15
    § 11.41..........................................................................................................15

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM IN SUPPORT OF PLS.' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL

## I.   **PRELIMINARY STATEMENT**

After more than eight years of litigation, and only three months before the scheduled class action trial was set to commence, the parties have agreed to settle this case. Defendant PricewaterhouseCoopers LLP ("PwC") was prepared to continue its defense against the wage and hour claims of the certified plaintiff class of Attest Associates employed by PwC in California (the "Class"). Likewise, Plaintiffs Jason Campbell and Sarah Sobek ("Plaintiffs") and the Class were prepared to litigate their claims through trial and any subsequent appeals. Both parties, however, recognized the cost and risk of continuing litigation and the potential benefits of settlement and agreed to participate in settlement discussions proposed by the Court.

A settlement conference was conducted by Magistrate Judge Kendall J. Newman on December 4, 2014. After extensive negotiations, the parties were able to come closer to agreement than they had in past settlement negotiations, but remained some distance apart. Magistrate Judge Newman then made a mediator's proposal. After careful consideration, the parties agreed to that proposal and have now finalized a Settlement Agreement and Release[1] and proposed notice plan for the Court's review and preliminary approval. A copy of the executed Settlement Agreement and Release is attached as Exhibit A to the accompanying Declaration of William A. Kershaw in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Kershaw Decl.").

Pursuant to Federal Rule of Civil Procedure 23(e), Court approval is required to effectuate the Settlement, and this motion seeks the Court's preliminary approval of the Settlement and notice plan. The parties will be available for a fairness hearing at the Court's convenience.

## II.   **THE LITIGATION**

### A.   **Plaintiffs' Underlying Allegations**

Plaintiffs allege that PwC violated California law by improperly classifying all of its unlicensed Attest Associates as exempt employees and failing to pay overtime. Plaintiffs assert that—based on PwC's uniform policies, practices and procedures—its unlicensed Attest

---

[1] The terms "Settlement Agreement," "Settlement" or "Agreement" as used herein, refer to the parties' Settlement Agreement and Release, executed on January 14, 2015.

1   Associates do not meet the requirements of the professional, administrative or executive

2   exemptions.  In addition, Plaintiffs allege that PwC failed to provide proper itemized wage

3   statements and unlawfully denied Class members statutorily mandated rest periods and lunch

4   breaks.

5          With respect to Plaintiffs' contention that PwC's unlicensed Attest Associates do not

6   satisfy all of the requirements for being exempt from overtime pay, Plaintiffs argue in part that

7   PwC does not require a prolonged course of specialized academic instruction as a standard

8   prerequisite for acceptance into the Attest Associate position.  Plaintiffs also argue that Attest

9   Associates were required to follow specific instructions outlined in PwC's internal audit manual,

10  which set forth protocols that Attest Associates were required to follow in carrying out their

11  work.  According to Plaintiffs, Class members' work was subject to review by one or more

12  supervisors and they were not permitted to proceed with subsequent steps in an audit until their

13  work had been submitted to and approved by a supervisor.  Plaintiffs assert that PwC's unlicensed

14  Attest Associates are fundamentally working as apprentices and assistants to licensed CPAs.

15  Plaintiffs allege that Class members do not independently perform the work of Attest

16  professionals; they perform work that assists them.

17         Plaintiffs' operative complaint seeks compensatory damages, restitution, statutory

18  damages and penalties, interest, exemplary damages and injunctive relief for the Class.

19     **B.     PwC Denies Plaintiffs' Allegations**

20         PwC denies Plaintiffs' allegations and denies that it committed any wrongful act or

21  violated any law.  PwC further denies that Plaintiffs and the Class are entitled to any form of

22  relief based on any alleged conduct.  PwC contends that it has meritorious defenses to all of the

23  claims alleged in this case, and further contends that this action is not properly maintainable as a

24  class action.

25         More specifically, PwC contends that its Attest Associates were properly classified as

26  exempt employees under California Labor Laws.  Were this case to be tried, Plaintiffs are aware

27  of PwC's stated intention to prove that Attest Associate work required advanced knowledge

28  acquired in a prolonged course of specialized intellectual instruction and that that standard was

-2-

met.  PwC also intended to prove at trial that Attest Associates' actual work and job responsibilities (without regard to their pre-licensure status) required them to exercise the discretion and independent judgment required to qualify as exempt employees under the professional and administrative exemptions.  In regard to the Administrative Exemption, PwC also contends that Class members worked under only general supervision and performed work that was directly related to management policies and general business operations of PwC or its audit clients.

PwC continues to deny that class certification is appropriate for litigation purposes and contends that this action cannot be tried as a class action consistent with PwC's due process right to present all of its defenses to Plaintiffs' individual claims.

### C.   Case History and Proceedings to Date

#### 1.   Commencement of the Lawsuit

Plaintiffs filed their First Amended Class Action Complaint on November 1, 2006.  (Dkt. No. 6.)  Plaintiffs alleged violations of:  Labor Code sections 510 and 1194 for failure to pay overtime; Labor Code sections 512 and 226.7 for failure to provide required meal periods; Labor Code section 226.7 for failure to provide required rest periods; Labor Code sections 226 and 1174 for failure to provide itemized employee wage statements; Labor Code section 203 for waiting time penalties; and Business and Professions Code sections 17200, *et seq*., for unfair business practices.  Plaintiffs filed a Second Amended Class Action Complaint ("SAC") on January 22, 2007.  (Dkt. No. 25.)  PwC filed its Answer to the SAC on April 3, 2007.  (Dkt. No. 39.)

#### 2.   Discovery

The parties aggressively and thoroughly discovered the case over a period of several years.  Plaintiffs propounded their first request for documents in January 2007.  Through January 2009, Plaintiffs served more than 120 separate document requests on PwC.  The production by PwC was extensive.  PwC produced over 275,000 pages of responsive documents, including: PwC's training materials for its "Go Audit" training series; electronic "mock audits" used in training; PwC's audit policies and procedures, including its Code of Conduct, Audit Guide and other audit guidance; personnel records for every Class Member; timekeeping and payroll data for

-3-

every Class Member.  PwC also produced substantial electronic discovery, including "MyClient"

files relating to more than fifty actual audit engagements.  These files were produced in native

format (Lotus Notes).  (Kershaw Decl. ¶ 3a.)

During fact discovery, in addition to the above-referenced document production, Plaintiffs

deposed a number of PwC witnesses, including: Carl Lee Overstreet, a Partner in PwC's

Sacramento office; Kathleen Harada and Debbie McBee, who were PwC's Federal Rule of Civil

Procedure ("Rule") 30(b)(6) designees on a variety of subjects; and five of PwC's declarants.  In

addition, Plaintiffs defended the depositions of the two named Plaintiffs, Jason Campbell and

Sarah Sobek.  With respect to written discovery, Plaintiffs served four sets of interrogatories and

one set of requests for admission.  Plaintiffs Campbell and Sobek also searched for and produced

documents and responded to written discovery served by PwC.

Expert discovery occurred early in the case and again following remand from the Ninth

Circuit.  Plaintiffs deposed PwC's experts Michael Moomaw, Ruben Davila, Sandra Johnigan,

and Michael Ward; PwC deposed Plaintiffs' expert witnesses Mike Ueltzen, Lynn Turner and

Bruce McFarlane.  (Kershaw Decl. ¶ 3a.)

### 3.     Class Certification

On October 24, 2007, Plaintiffs filed their motion to certify a class of

> [a]ll persons employed by [PwC] in California, from October 27, 2002 until the
> time when class notice may be given, who:  (1) assisted certified public
> accountants in the practice of public accountancy, as provided for in California
> Business and Professions Code sections 5051 and 5053, (2) worked as associates
> or senior associates in the assurance and tax lines of service, (3) were not licensed
> by the State of California as certified public accountants during some or all of this
> time period, and (4) were classified as exempt employees.

(Pls.' Mem. of Law in Supp. of Mot. for Class Certification 1 (filed under seal).)  On March 25,

2008, the Court provisionally granted Plaintiffs' class certification motion with respect to Attest

Associates and denied the motion with respect to Senior Associates and non-Attest Associates.

(Dkt. No. 183.)  Following the Court's class certification decision, PwC filed a Rule 23(f) petition

with the Ninth Circuit Court of Appeals.  Plaintiffs opposed the petition and it was denied by the

Ninth Circuit on May 16, 2008.  Class Notice was disseminated to the certified litigation Class on

-4-

July 23, 2008.  (Kershaw Decl. ¶ 3b.)

### 4.     Summary Judgment Motions

Four summary judgment motions were filed in this case.  On September 22, 2008, Plaintiffs filed a summary judgment motion relating to PwC's affirmative defense of exemption. (Dkt. No. 230.)  On October 27, 2008, Plaintiffs moved for summary judgment arguing that PwC breached its legal duty to:  pay overtime wages; authorize and permit paid rest breaks; provide and report meal periods; furnish accurate itemized wage statements; pay timely final wages; and pay interest on unpaid wages.  (Dkt. No. 255.)  PwC filed a cross-motion for summary judgment, or in the alternative for summary adjudication, on Plaintiffs' claims that Attest Associates were misclassified as exempt from overtime law.  (Dkt. No. 261.)  PwC also moved for summary judgment against Plaintiff Jason Campbell, individually.  (Dkt. No. 258.)  The parties' summary judgment motions involved several hundreds of pages of briefing, over 100 exhibits and more than twenty witness declarations.  With respect to PwC's two summary judgment motions, Plaintiffs were required to address more than 200 undisputed facts.  These summary judgment motions were also accompanied by separate evidentiary motions and motions to seal.  (Kershaw Decl. ¶ 3c.)

On March 11, 2009, the Court granted Plaintiffs' motion for summary adjudication, holding that Class members were not exempt.  The Court also granted in part PwC's cross-motion and dismissed Plaintiffs' claims for waiting time penalties and punitive damages.  (Dkt. No. 390; Kershaw Decl. ¶ 3c.)

### 5.     Appeal of Order Granting Plaintiffs' Summary Judgment Motion

PwC filed a petition for immediate appeal after the Court granted Plaintiffs' summary adjudication motion.  Plaintiffs opposed the petition.  However, the Ninth Circuit granted PwC's petition for immediate appeal.  The parties engaged in substantial briefing related to PwC's petition.  In addition, three amici curiae briefs were submitted on behalf of PwC and three amici curiae briefs were submitted on behalf of Plaintiffs.  Plaintiffs' counsel retained David C. Frederick of Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C. to prosecute the appeal. (Kershaw Decl. ¶ 3d.)

On June 15, 2011, the Ninth Circuit reversed the district court's order granting summary adjudication to Plaintiffs and remanded the case to the district court for further proceedings. *Campbell v. PricewaterhouseCoopers, LLP*, 642 F.3d 820 (9th Cir. 2011). As to the Professional Exemption, the Ninth Circuit held that this Court's conclusion "that unlicensed accountants are categorically ineligible for the exemption as a matter of law . . . is contrary to the exemption's text and structure . . . ." *Id.* at 825. The Ninth Circuit found that a "fact-specific" inquiry was required for determining whether an unlicensed accountant satisfied the exemption and stated that "the crucial touchstone for the professional exemption . . . is the employee's actual job duties and responsibilities." *Id.* at 827–28, 830. Similarly, the Ninth Circuit found that the inquiry under the Administrative Exemption "will be fact-intensive . . . ." *Id.* at 832. Given the "material fact questions on whether Plaintiffs fall under either exemption," the Ninth Circuit held that "[t]he exemption defenses must be resolved by trial. *Id.* at 833.

### 6.    PwC's Motion to Decertify the Class

In light of the Ninth Circuit's June 15, 2011 decision in this case, and other developments in the Ninth Circuit and the United States Supreme Court, including *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011), PwC moved to decertify the Class on February 27, 2012. (Dkt. No. 515.) On November 29, 2012, this Court denied PwC's decertification motion. (Dkt. No. 557.) PwC filed a petition for Rule 23(f) review of the Court's order denying decertification. The petition was filed on December 7, 2012 and Plaintiffs' response was filed on December 17, 2012. PwC's petition was denied on March 1, 2013. (Kershaw Decl. ¶ 3e.)

### 7.    Trial

On May 6, 2014, this Court entered a trial schedule that established March 30, 2015 as the date for an anticipated trial lasting for approximately thirty to forty-five days. (Dkt. No. 601.) The parties filed *Daubert* motions against their opposing experts on September 15, 2014. (Dkt. Nos. 608-611.) The Court decided the *Daubert* motions at the October 17, 2014 hearing on the motions (Dkt. No. 624) and through its October 24, 2014 order (Dkt. No. 625). Plaintiffs filed their Pretrial Statement on November 25, 2014 (Dkt. No. 635), which attached Plaintiffs' proposed Witness List (Dkt. No. 635-1) and potential Trial Exhibits (Dkt. No. 635-2).

PwC's Pretrial Statement was set to be filed on December 16, 2014 and the parties' motions in limine were due by January 8, 2015. (Kershaw Decl. ¶ 3f.) The parties were less than three months away from taking this case to trial when the underlying Settlement Agreement was reached. (*Id.* ¶ 5.)

## III.   THE SETTLEMENT

### A.   The Proposed Settlement Class

The proposed class for settlement purposes is based on the litigation Class certified by the Court in this action. It includes all persons employed by PwC in California (a) who, at any time during the period October 27, 2002 to July 23, 2008 worked as Associates in the Attest Division of PwC's Assurance Line of Service, (b) who were not licensed as certified public accountants by the State of California for some or all of the time they worked in this position during that period, (c) who were classified as exempt employees while working in this position during that period, (d) who were sent a class notice on or about July 23, 2008 notifying them that they are members of the certified class in this action, and (e) who did not validly or timely exclude themselves from the this action following dissemination of the July 2008 class notice. This class includes individuals who opted-in to the FLSA collective action that was conditionally certified on November 25, 2009 in *Kress v. PricewaterhouseCoopers LLP*, Case No. 2:08-cv-00965-TLN-AC, pending in the Eastern District of California ("*Le/Kress*"). Class Members who do not validly or timely exclude themselves from the Settlement in accordance with the procedures described in the Settlement Agreement will participate in the Settlement and will be referred to herein as "Settlement Class Members". (Settlement Agreement ¶¶ 6, 44.)

There are 1,944 Class Members. PwC possesses address information for all of these Class members, which will facilitate direct mailed notice of the Settlement and expeditious distribution of Settlement funds to Settlement Class Members.

### B.   Settlement Relief

Under the Settlement, PwC agrees to pay $5 million ("Gross Settlement Payment") to resolve this litigation. (Settlement Agreement ¶ 54.) After deducting attorneys' fees and litigation costs; costs related to administering the Settlement; and service awards to the class

-7-

representatives for initiating and bearing the burdens of this litigation for over eight years, including the risk for taxable costs, the remainder of the Gross Settlement Payment will be available for distribution to Settlement Class Members ("Net Settlement Proceeds"). (*Id.* ¶ 63.) There are no circumstances where any portion of the Gross Settlement Payment will revert to PwC. (Kershaw Decl. ¶ 8.)

The Net Settlement Proceeds will be distributed based on each Settlement Class Member's *pro rata* share of the Gross Settlement Payment and apportioned based on two criteria: (1) the number of hours over standard he or she worked as a Class Member, and (2) the length of time he or she was a Class Member. (Settlement Agreement ¶ 64.) Class Members will be informed in their Notice Packets of their potential approximate payment under the Settlement and the number of hours over standard and work weeks used to calculate their payment amount. If a Class member contests the number of hours over standard or work weeks reported in the proposed Class Notice, he or she may present evidence of the correct number of overtime hours or work weeks to the Settlement Administrator for purposes of seeking an adjustment in his or her prospective payment. (*Id.* ¶ 78.) Interest earned on the Gross Settlement Payment through the date on which the Court enters an order granting final approval of the Settlement and judgment of dismissal ("Final Approval") will be distributed on a *pro rata* basis to Settlement Class Members. (*Id.* ¶ 73.)

Any unclaimed or uncashed Net Settlement Proceeds will be held by the Settlement Administrator and available to be claimed by the payee for 365 days following the initial payment date. Any Net Settlement Proceeds remaining with the Settlement Administrator after 365 days will be paid to the accounting program at California State University, Sacramento. (*Id.* ¶ 89; Kershaw Decl. ¶ 8.) The Gross Settlement Payment is the sole consideration PwC is paying to Settlement Class Members for the Settlement. Because a portion of the proceeds distributed to Settlement Class Members will be classified as wages, PwC will also pay to the government the employer's share of payroll taxes on those amounts. PwC is not reclassifying any Attest Associates as non-exempt as a condition of the Settlement Agreement or otherwise.

### C.  Settlement Administrator

The parties jointly request that the Court appoint Heffler Claims Group ("Settlement Administrator"), a third-party claims administrator, as the Settlement Administrator to facilitate the administration of all claims in this matter.  The Settlement Administrator's responsibility will include, but not be limited to:  (i) preparing and overseeing distribution of Settlement notice; (ii) maintaining the Toll-Free Number through which Class members may request information about the Settlement and copies of the Agreement or relevant court documents; (iii) receiving any exclusion requests from the Class and compiling records relating to those requests; (iv) receiving any objections to the Settlement from Settlement Class Members and compiling records related to those objections; and (v) any other tasks reasonably required to effectuate the foregoing.  (*See*, *e.g.*, Settlement Agreement ¶¶ 62, 66, 69, 72, 75, 78-79.)  The cost of the Settlement Administration is expected not to exceed $40,000.  (*Id.* ¶ 63(d).)  The Settlement Agreement provides that such administrative costs will be split equally between the parties, with Plaintiffs' share to be deducted from the Gross Settlement Payment and PwC advancing its share of the cost to the Settlement Administrator.[2]  (*Id.* ¶¶ 63(d), 67.)

### D.  The Notice Program

The notice program will be carried out pursuant to paragraphs 64 to 90 of the Settlement Agreement.  Under the Settlement, PwC will provide the Settlement Administrator with a list of all Class members, including last known contact information, their hours over standard and work weeks based on PwC's records.  The Settlement Administrator will calculate each Class member's proportional approximate share of the estimated Net Settlement Proceeds.  Within ten calendar days after receiving this information, the Settlement Administrator will send a Notice of Class Settlement or, alternatively, a Notice of Class Settlement to *Le/Kress* Opt-In FLSA Attest Associate Plaintiffs[3] to Class members.  (Settlement Agreement ¶ 75.)

---

[2] If Class members opt out of the Settlement Agreement but the Agreement is ultimately consummated, PwC's share of the administrative costs will be paid for with the portion of the proceeds allocated to those who opted out of the Agreement to the extent those funds are sufficient to cover it.

[3] These Notices are referred to collectively and separately as the "Notice Packet."

Notices will be sent via First Class Mail. If a Notice Packet is returned as undeliverable with a forwarding address provided by the United States Postal Service, the Settlement Administrator will promptly re-send the Notice Packet to that forwarding address. If an original Notice Packet is returned as undeliverable without a forwarding address, the Settlement Administrator will make reasonable efforts to locate forwarding addresses, including skip trace, and if it obtains a more recent address, will resend the Notice Packet. (*Id.* ¶ 76.) At least ten calendar days prior to the final approval hearing, the Settlement Administrator will provide a declaration of due diligence and proof of mailing to counsel for the parties regarding the mailing of the Notice Packet. (*Id.* ¶ 77.)

### E.     Class Action Fairness Act Notice

PwC will ensure that, within ten days after the filing of this motion for preliminary approval, it will cause to be served (through the Settlement Administrator if it elects to do so) upon the appropriate state official in each state of the United States where a Class member resides, and the appropriate federal official, a notice of the proposed Settlement consisting of the materials required by 28 U.S.C. § 1715 of the Class Action Fairness Act ("CAFA"). (Settlement Agreement ¶ 72.)

### F.     The Release

As more fully expressed in the Settlement Agreement, Settlement Class Members will release any and all claims under state and federal law, whether asserted in this case or in any other case or unasserted, that arise from being classified as exempt from overtime while working at PwC as an Attest Associate at any time from October 27, 2002 through the date of Final Approval. The released claims only cover work performed after October 27, 2002 to the extent the Settlement Class Members continued to meet the requirements of Class membership.

The scope of the release covers Class Members who are also opt-in plaintiffs in *Le/Kress v. PwC,* Case No. 2:08-cv-00965-TLN-AC (E.D. Cal.), a Fair Labor Standards Act ("FLSA") case pending before the Court. For those overlap Class Members, the claims in *Le/Kress* cover the same work, in the same position (Attest Associate) over the same time period as are at issue in this case. The release in the Settlement Agreement explicitly covers and results in the release of

the federal claims of Settlement Class Members who have duplicate claims in *Le/Kress*, and the overlap Class Members will receive notice specifically pointing that out.

The released claims under the Settlement do not involve or release any claims arising from any Settlement Class Member's work at PwC in the position of Attest Senior Associate. (Settlement Agreement ¶¶ 57-61.)

### G.   Opportunity to Opt Out and Object

Under the terms of the proposed Settlement Agreement and Release, Class members will have the right to request exclusion from the Settlement or object to its terms.   (Settlement Agreement ¶¶ 80-82.)   Requests for exclusion or objections must be received by the Settlement Administrator no later than the Objection/Exclusion Deadline. (*Id.* ¶ 33.)   Class members will be informed of these rights via direct notice through First Class Mail.   Two notice packets will be prepared:   one for mailing to Class Members with claims only in *Campbell*, and the other for *Campbell* Class members who are also opt-in plaintiffs in the *Le/Kress* FLSA case.   Class Members can also ask questions or obtain additional information by contacting Class Counsel or the Settlement Administrator through the Toll-Free Number, which will be established by the Settlement Administrator.   Class members who are currently employed at PwC may also contact PwC's counsel with questions.   The Settlement Agreement and Release will be posted on Kershaw Cutter & Ratinoff LLP's ("KCR") website.

### H.   Termination of the Settlement

If 150 or more Class Members (inclusive of the *Le/Kress* Opt-In FLSA Attest Associate Plaintiffs) opt out of the Settlement by timely submitting an exclusion request, then at PwC's sole discretion, the Settlement may be rendered null and void. (Settlement Agreement ¶ 83.)   In that event, the parties will be relieved of any obligation under the Settlement Agreement other than PwC's obligation to bear the proportional costs of settlement administration incurred prior to the time it exercised its right to void the Settlement. (*Id.* ¶ 83, 95)

### I.   Class Representatives' Application for Service Awards

Plaintiffs will apply to the Court for a service award of $15,000 for each class representative. (Settlement Agreement ¶ 63(c).)   Any service award approved by the Court will

be paid out of the Gross Settlement Payment.  (*Id.*)  PwC has not made any agreement with Plaintiffs concerning this amount and has expressly reserved its right to oppose the proposed service awards as unreasonable.

**J.      Class Counsel's Application for Attorneys' Fees, Costs and Expenses**

Class Counsel[4] will request an award of attorney's fees ("Motion for Attorneys' Fees") not to exceed 40% of the Gross Settlement Payment.  (Settlement Agreement ¶ 63(b).)  Class Counsel has undertaken representation of the Class on a contingent basis at the significant risk of being uncompensated for any of the work undertaken in this case, which commenced over eight years ago.  (Kershaw Decl. ¶ 14.)  Class Counsel has expended in excess of 11,500 hours in this action and the requested attorneys' fees are substantially less than the lodestar amount (hours multiplied by hourly rate) worked by Class Counsel over the course of the case.  (*Id.*)  Class Counsel will also apply for reimbursement of actual expenses incurred in an amount not to exceed $925,000.  (Settlement Agreement ¶ 63(a).)

Any award of fees and expenses approved by the Court shall be paid out of the Gross Settlement Payment.  PwC will not oppose any Motion for Fees so long as the total amounts requested by Class Counsel do not exceed the above amounts.  The amount of the attorneys' fee and expense award will be set by the Court after providing Settlement Class Members with an opportunity to submit objections, if any, to the Motion for Attorneys' Fees.  Any fee and expense amount approved by the Court that is less than the amount sought by Class Counsel will be the amount deducted from the Gross Settlement Payment to reach the Net Settlement Proceeds that will be distributed to those Settlement Class Members who participate in the Settlement.  (*Id.* ¶ 64.)

## IV.    LEGAL ANALYSIS

### A.      Preliminary Approval Standard

Rule 23(e) requires court approval for settlement of class claims.  The approval of a class action settlement is a three-step process.  The first step is preliminary determination of whether

---

[4] "Class Counsel" means Plaintiffs' counsel, KCR and such other counsel that have represented Plaintiffs in this case, including without limitation, Kramon & Graham, P.A. (Settlement Agreement ¶ 5.)

the proposed settlement is within the range of possible approval. *See*, *e.g.*, *Manual for Complex Litigation (Fourth)* § 21.632 (2004). The purpose of the court's preliminary evaluation of the proposed settlement is to determine whether it is within the "range of possible judicial approval," and whether class notice and the scheduling of a formal fairness hearing are warranted. 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11.25 (4th ed. 2002) ("*Newberg*").

If a court finds that a settlement proposal is "within the range of possible approval," it then proceeds to the second step and directs that "notice be given to the class members of a formal fairness hearing . . . ." *Young v. Polo Retail, LLC*, No. C-02-4546 VRW, 2006 U.S. Dist. LEXIS 81077, at *13 (N.D. Cal. Oct. 25, 2006) (quotation omitted).

In the third or final step, a hearing is held to determine whether the proposed settlement is fair, adequate, and reasonable to the settlement class as a whole. *Id.* This protects settlement class members' procedural due process rights and enables the court to fulfill its role as the guardian of the settlement class's interests. The decision to approve or reject a proposed settlement is committed to the court's sound discretion. *See*, *e.g.*, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

This motion for preliminary approval is submitted in support of the first and second steps of the settlement approval process.

**B.      The Proposed Settlement Class Satisfies the Requirements of Rule 23**

Prior to addressing the adequacy of the proposed settlement, the court must determine whether the class, as agreed to by the parties, may be certified for settlement purposes. *See*, *e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 612-613 (1997). A court may grant conditional approval of a class action where the class satisfies the four prerequisites of Rule 23(a) (numerosity, commonality, typicality and adequacy), as well as one of the three subsections of Rule 23(b). *See*, *e.g.*, *Amchem*, 521 U.S. at 614.

In this case, certification for settlement purposes is appropriate as this Court has already certified a litigation class that is co-extensive with the proposed Settlement Class. This case has been proceeding as a class action for nearly seven years. The Court extensively analyzed the elements of Rule 23(a); whether each of the three exemptions, and the independent judgment and

-13-

discretion requirement under each of the three exemptions, satisfied predominance; and superiority under Rule 23(b)(3).  On March 25, 2008, the Court granted class certification as to PwC's Attest Associates on March 25, 2008.  (Dkt. No. 183.)  PwC filed a Rule 23(f) petition with the Ninth Circuit Court of Appeals and Plaintiffs opposed the petition.  The petition was denied by the Ninth Circuit on May 16, 2008.  Class Notice was disseminated to the certified litigation Class on July 23, 2008.  PwC's later moved to decertify the Class based on developments in the law subsequent to the provisional certification; that motion was denied on November 29, 2012 (Dkt. No. 557), and the Ninth Circuit denied a petition for immediate appeal.

The certified litigation class consists of all persons employed by PricewaterhouseCoopers LLP in California, from October 27, 2002 to July 23, 2008, who: (1) assisted certified public accountants in the practice of public accountancy, as provided for in California Business and Professions Code sections 5051 and 5053, (2) worked as Attest Associates in the assurance line of service, (3) were not licensed by the State of California as certified public accountants during some or all of this time period, and (4) were classified as exempt employees.  The Class for purposes of Settlement (i.e., the potential Settlement Class) includes all persons employed by PwC in California (a) who, at any time during the period October 27, 2002 to July 23, 2008 worked as Associates in the Attest Division of PwC's Assurance Line of Service, (b) who were not licensed as certified public accountants by the State of California for some or all of the time they worked in this position during that period,  (c) who were classified as exempt employees while working in this position during that period, (d) who were sent a class notice on or about July 23, 2008 notifying them that they are members of the certified class in this action, and (e) who did not validly or timely exclude themselves from the this action following dissemination of the July 2008 class notice.  There are 1,944 current and former PwC Attest Associates in the potential Settlement Class.

The class for settlement purposes, which is almost co-extensive with the certified litigation Class, fully satisfies the requirements for a Rule 23 settlement class.

///

///

-14-

C.      **Preliminary Approval of the Settlement Is Appropriate**

"[T]he law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *Newberg* § 11.41; *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also Util. Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989). The *Manual for Complex Litigation* characterizes the preliminary approval inquiry as a court's "initial assessment" of the fairness of the proposed settlement, made on the basis of written submissions and informal presentation from the settling parties, and summarizes the preliminary approval criteria as follows:

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice . . . be given to the Class Members of a formal Fairness Hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

*Manual for Complex Litigation (Fourth)* § 30.41 (3d ed. 1995) (the "*Manual*").

The court "need not review the settlement in detail at this juncture." *In re M.L. Stern Overtime Litig.*, No. 07-CV-0118-BTM (JMA), 2009 U.S. Dist. LEXIS 31650, at *9 (S.D. Cal. Apr. 13, 2009).  Rather, the court must only find that the settlement falls within the range of possible final approval, also described as "the range of reasonableness." *See*, *e.g.*, *In re Portal Software Sec. Litig.*, No. C-03-5138 VRW, 2007 U.S. Dist. LEXIS 51794, at *14-15 (N.D. Cal. June 30, 2007) (indicating that the court determines whether a settlement should be preliminarily approved by analyzing whether the proposed settlement falls within the range of reasonableness) (quotation omitted); *Ball v. Petrol Transp., Inc.*, No. CV-F-04-5370-AWI-LJO, 2006 U.S. Dist. LEXIS 35959, at *2 (E.D. Cal. June 2, 2006) (finding that the settlement was within a range of reasonableness of a settlement that could be finally approved by the court); *see also Newberg* § 11.25.

In making this determination, the court should give

proper deference to the private consensual decision of the parties . . . the court's

-15-

1
2
3

> intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

4  *Hanlon*, 150 F.3d at 1027 (quotation omitted).

5

6  Indeed, as a "[s]ettlement is the offspring of compromise," the question upon preliminary

7  approval "is not whether the final product could be prettier, smarter or snazzier, but whether it is

8  fair, adequate and free from collusion." *Id.* Accordingly, particularly when experienced counsel

9  familiar with the litigation have reached settlement, a court should not second guess the parties, or

10  substitute its judgment for that of the proponents of the settlement. *See*, *e.g.*, *In re Xoma Corp.*

11  *Sec. Litig.*, No. C-91-2252 TEH, 1992 U.S. Dist. LEXIS 10502, at *9 (N.D. Cal. July 14, 1992)

12  (holding that courts should be hesitant to substitute its judgment for that of experienced counsel

13  who recommend the settlement).

Courts have held that preliminary approval should be granted where the proposed

14  settlement is a "'product of serious, informed, non-collusive negotiations, has no obvious

15  deficiencies, does not improperly grant preferential treatment to class representatives or segments

16  of the class, and falls within the range of possible approval . . . .'" *Young*, 2006 U.S. Dist. LEXIS

17  81077, at *12-13 (quotation omitted); *In re Portal Software Sec. Litig.*, 2007 U.S. Dist. LEXIS

18  51794, at *14 (same); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal.

19  2007) (same).

20
21

**1.     Plaintiffs' Litigation Contentions and Views on the Proposed Settlement**

22  Here, the proposed Settlement falls well within the range of possible approval, sufficient

23  to support an order granting preliminary approval and directing issuance of notice. Several

24  factors bolster this conclusion: the Settlement was the product of arm's-length negotiations

25  between the parties; the parties were represented by experienced counsel; and the Settlement

26  confers immediate and significant benefits to the Settlement Class compared to the substantial

27  risks of proceeding with litigation. There is nothing in the course of the negotiations or the

28  substance of the Settlement that "disclose[s] grounds to doubt its fairness." *Manual* § 30.41.

-16-

The Class members, represented by experienced counsel,[5] negotiated the proposed Settlement with PwC's Counsel after the Court entered an order requesting that the parties consider attending a settlement conference in the face of an impending trial date. (Dkt. No. 628.) While the parties attempted in February 2009 to resolve the case in mediation, that effort failed. (Kershaw Decl. ¶ 4.)  With that background, on December 4, 2014, the parties participated in a vigorous, full-day mediation session with Magistrate Judge Newman serving as mediator. (*Id.*) The mediation concluded, and this case was able to resolve, after Magistrate Judge Newman issued a mediator's proposal to the parties. The parties continued their settlement negotiations in good faith and at arms' length with Magistrate Judge Newman's assistance, and finalized outstanding settlement terms by telephone and email in the several weeks following the mediation. (*Id.*)

The extensive investigation that Class Counsel undertook before and during the eight years that this case has been pending, the substantial amounts of information exchanged through formal discovery, and the parties' preparation for trial has allowed Class Counsel to thoroughly assess the strengths and weaknesses of the claims against PwC and the benefits of the proposed Settlement under the circumstances of this case. (Kershaw Dec. ¶¶ 3(a)-(f), 12.)  Class Counsel believes that the Settlement represents an excellent result for the Class under the circumstances. (*Id.* ¶ 12.)  *See*, *e.g.*, *Hanlon*, 150 F.3d at 1026 (considering the views and experience of class counsel in assessing the fairness, reasonableness and adequacy of the proposed settlement).

The Settlement provides substantial and direct monetary relief to 1,944 Class members. The proposed recovery for the Class addresses the very claims underlying this lawsuit, namely that Plaintiffs and Class members received no compensation for the overtime hours that they worked and were entitled to wages and interest for meal and rest break violations as well as penalties for itemized wage statement violations. With this Settlement, Settlement Class Members will receive an average recovery in excess of $1,000. (Kershaw Decl. ¶ 9.)  These payments are based primarily on the number of hours Class members worked in excess of eight

---

[5] The firm resume for Kershaw, Cutter & Ratinoff, LLP is attached as Exhibit B to the Kershaw Declaration.

hours per day and also on the number of work weeks each Class member worked over the Class period.

In addition, there were no discussions regarding the amount of attorneys' fees to be sought by Class Counsel until after agreement was reached on the substantive terms of the Settlement. (*Id.* ¶ 14.)   The attorneys' fees sought by Class Counsel, which represents 40% of the Gross Settlement Payment, are reasonable, particularly in cases such as this one:  complex contingent fee litigation that has been heavily litigated for close to a decade.  *See, e.g.*, *Birch v. Office Depot, Inc.*, Case No. 06-cv-1690, 2007 U.S. Dist. LEXIS 102747 (S.D. Cal. Sept. 28, 2007) (awarding a 40% fee on a $16 million wage and hour class action)*; see also Rippee v. Boston Mkt. Corp.*, No. 05-cv-1359, 2006 U.S. Dist. LEXIS 101136 (S.D. Cal. Oct. 10, 2006) (awarding a 40% fee on a $3.75 million wage and hour class action)*.

Class Counsel's requested attorneys' fee only represents one-third of their lodestar (approximately), which amounts to a significant negative multiplier on their extensive work in this case.  For more than eight years, the work undertaken by experienced Class Counsel was performed entirely on a contingent basis and is deserving of a positive multiplier.  Class Counsel has, however, limited their attorneys' fee request to 40% of the Gross Settlement Payment to preserve a significant recovery for Settlement Class Members.   (Kershaw Decl. ¶ 14.)   In addition, the requested class representative service awards of $15,000 are reasonable given the risks of litigation, as described above, the risk of an award of costs against them, as well as the significant assistance that they provided to Class Counsel and the Class in pursuing this litigation over an extended period of time.  (*Id.* ¶ 15.)  *See, e.g.*, *Birch*, 2007 U.S. Dist. LEXIS 102747, at *6-7 (approving class representative service awards of $15,000).

## 2.   PwC's Litigation Contentions

While Plaintiffs maintain that they have a strong case on behalf of the Class and should prevail at trial, there is considerable litigation risk.  The law applicable to the case has undergone significant shifts over the course of this case during the last eight years and PwC believes that the developments in the law have strengthened its position on the substance and procedure for this type of litigation.

-18-

Regarding class certification, PwC argues that the Ninth Circuit's decision in *Campbell v. PricewaterhouseCooopers, LLP*, 642 F.3d 820 (9th Cir. 2011) wholly undermines the provisional class certification in this case.   In *Campbell*, the Ninth Circuit held in part that unlicensed accountants are not categorically ineligible for the professional exemption and that a fact-intensive analysis of employees' actual job duties is required under the professional and administrative exemptions.   *Id.* at 825, 827-28, 830, 832.   In addition, following the Ninth Circuit's ruling in *Campbell*, the court in *Brady v. Deloitte & Touche LLP*, No. C 08-177 SI, 2012 U.S. Dist. LEXIS 42118 (N.D. Cal. Mar. 27, 2012)—a misclassification case involving unpaid overtime to a certified class of unlicensed Audit Assistants, Audit Senior Assistants, Audit In-Charges and Audit Senior positions—granted Deloitte & Touche's decertification motion.   Class decertification in *Brady* was recently upheld by the Ninth Circuit.   *Brady v. Deloitte & Touche LLP*, No. 12-16384, 2014 U.S. App. LEXIS 19283 (9th Cir. Oct. 9, 2014).   PwC also argues that the California Supreme Court's decision in *Brinker Restaurant Corp. v. Superior Court*, 53 Cal. 4th 1004 (2012) and its progeny require decertification of Plaintiffs' meal and rest break claims. To be sure, there is no guarantee that the litigation Class in this case will be maintained.   *See, e.g.*, *O'Donovan v. Cashcall, Inc.*, 278 F.R.D. 479, 504-05 (N.D. Cal. 2011) ("The Court retains the inherent power to review class certification decisions at any time.   Should future circumstances demonstrate that individual issues . . . either predominate or render the case less manageable than anticipated, the Court can revisit its certification decision at that time.") (citing Rule 23(c)(1)(C) and *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 633 (9th Cir. 1982)).

Regarding the merits of the exemption claim, PwC argues that Plaintiffs' principal legal theory, *i.e.,* that in the field of accounting only licensed CPAs are professionals, was eliminated by the Ninth Circuit's decision in this case.   *Campbell,* 642 F.3d at 825.   Furthermore, PwC argues that Attest Associates working pursuant to PwC policies do in fact exercise independent judgment as required for exemption.   In another wage and hour case, KPMG – another one of the "Big Four" accounting firms, along with PwC, Deloitte & Touche, and Ernst & Young – relied on evidence similar to that possessed by PwC here and won a ruling that its audit associates were exempt employees as a matter of federal law.   *Pippins v. KPMG LLP*, 759 F.3d 235 (2d Cir.

-19-

2014).   According to *Pippins*, unlicensed junior audit associates who perform entry-level accounting tasks at KPMG are "professionals" and exempt from overtime pay under the FLSA, 29 U.S.C. §§ 201-219 ("FLSA").   Plaintiffs in *Pippins* described audit associates' work as "routine, with heavy dependence on guidelines and templates, and that there is pervasive supervision culminating in the extensive review of any work product." *Pippins*, 759 F.3d at 245. However, the Second Circuit found that the fact that "tasks can be broken down into component parts, and that junior accountants are provided with step-by-step instructions . . . does not mean that . . . Audit Associates do not demonstrate the professional skepticism and trained intellect that is characteristic of professional accountants." *Id.* at 246.   PwC reads the Second Circuit's decision as cautioning against the "fundamental error" of "confus[ing] being an entry-level member of a profession with not being a professional at all." *Id.* at 247.   The Second Circuit concluded that KPMG's "audit associates, while early in their careers, are precisely the types of professionals the regulations seek to exempt from FLSA – well-compensated professionals at a top national accountancy practice, performing core accountancy tasks." *Id.* at 252.   While the Second Circuit's ruling is not controlling authority in this case, PwC argues that the analysis and outcome in *Pippins* foretells the ultimate result on the merits that will be reached in this case.

Given the Ninth Circuit's ruling in *Campbell* and *Brady*, meal and rest break analysis in California state courts, including the California Supreme Court, and the Second Circuit's decision in *Pippins*, there is uncertainty and risk as to whether Plaintiffs can prevail at trial.  (Kershaw Decl. ¶ 10.)  In contrast, the proposed Settlement recovers a significant fraction of the full amount of overtime pay at issue for the Class, which is approximately $38 million without interest. Moreover, even if Plaintiffs win at trial, they face significant risk on appeal.  (*Id.* ¶¶ 10-11.)  In light of these risks, the substantial and certain recovery available to Settlement Class Members through the proposed Settlement weighs heavily in favor of preliminary approval.

## V.   THE FORM OF NOTICE AND MEANS OF DISSEMINATION SHOULD BE APPROVED

"The Court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Rule 23(e).  Rule 23(e) requires that notice of a proposed settlement

1   inform class members of the following: (1) the nature of the pending litigation; (2) the general

2   terms of the proposed settlement; (3) that complete information is available from the court files;

3   and, (4) that any class member may appear and be heard at the fairness hearing. *Newberg* § 8.32.

4   The notice must also indicate an opportunity to opt out, that the judgment will bind all class

5   members who do not opt out, and that any member who does not opt out may appear through

6   counsel. Rule 23(c)(2).

7      Subsection (c)(2)(B) of Rule 23 further provides that "[f]or any class certified under Rule

8   23(b)(3), the court must direct to class members the best notice that is practicable under the

9   circumstances, including individual notice to all members who can be identified through

10   reasonable effort." *Id.* The best practicable notice is that which is "reasonably calculated, under

11   all the circumstances, to apprise interested parties of the pendency of the action and afford them

12   an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339

13   U.S. 306, 314 (1950).

14      Here, the proposed notice to the Class should also be approved. The proposed notice plan

15   consists of direct notice conveyed to Class members via First Class Mail. Two forms of notice

16   will be prepared: one directed to members of the *Campbell* Class only and the other for *Campbell*

17   Class members who have also opted into the *Le/Kress* FLSA case so those individuals are

18   informed that agreement to the *Campbell* Settlement also releases their *Le/Kress* FLSA claims. In

19   the event that the Settlement Administrator receives return mail messages stating that notice was

20   undeliverable, the Settlement Administrator will make reasonable efforts to locate forwarding

21   addresses for Class members (including skip tracing) and if it obtains a more recent address, will

22   re-send the Notice Packet. (Settlement Agreement ¶ 76.) This Notice Plan will maximize the

23   likelihood that Class members will be notified of the proposed settlement and its terms.

24      Furthermore, the notices clearly set forth the controversy between the parties and the

25   terms of the proposed Settlement, as well as the ways that Class members may participate, object

26   or exclude themselves. *See*, *e.g.*, *Churchill Vill, LLC, v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir.

27   2004) ("Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient

28   detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'")

-21-

1   (quoting *Mendoza v. United States*, 623 F.2d 1338, 1352 (9th Cir. 1980)).  The notices also

2   clearly state that the Settlement does not constitute an admission of liability by PwC and that the

3   Court has not ruled on the merits of the action.  Copies of the proposed Notice Packet are attached

4   as Exhibits B and C to the Settlement Agreement.

5       The proposed Notice Packet should be approved and disseminated to Class members.

6   **VI.**   <u>**CONCLUSION**</u>

7       For all of the foregoing reasons, Plaintiffs respectfully request that this Court grant

8   preliminary approval of the proposed Settlement, certify the Settlement Class, approve the

9   proposed Notice Packet, and schedule the final approval hearing.

10

11  Dated: January 14, 2015                                   KERSHAW, CUTTER, & RATINOFF, LLP

12

13                                                           By:   <u>*/s/ William A. Kershaw*</u>
                                                                   William A. Kershaw
14                                                                 *Attorneys for Plaintiffs and the Class*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM IN SUPPORT OF PLS.' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL